# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **ANDREA GOLDBLUM,** | : | |
| Plaintiff, | : | CASE NO. 1:19-CV-00398 |
| v. | : | JUDGE DLOTT |
| **UNIVERSITY OF CINCINNATI,** | : | MAGISTRATE JUDGE BOWMAN |
| Defendant. | : | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant University of Cincinnati, by and through its undersigned counsel, respectfully moves this Court to dismiss the claims of Plaintiff Andrea Goldblum. As set forth in the attached Memorandum in Support, Plaintiff has failed to state claims upon which relief can be granted, and this case should be dismissed in its entirety.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

 */s/ Reid T. Caryer*

REID T. CARYER (0079825)
*Trial Counsel*
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250 - Telephone
(614) 644-7634 - Facsimile
reid.caryer@ohioattorneygeneral.gov

ERIN E. BUTCHER (0087278)
MARISSA J. PALUMBO (0089283)
Senior Assistant Attorneys General
Employment Law Section

30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendant*

**MEMORANDUM IN SUPPORT**

**I.     Introduction.**

This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). (Compl., Doc. 1 at PageID # 1). Plaintiff, Andrea Goldblum, filed this lawsuit in response to the University of Cincinnati (the "University") giving her an opportunity to resign in lieu of termination. (*Id.* at PageID # 15, ¶¶ 44-45). Ms. Goldblum's resignation in lieu of termination was the direct result of her insubordinate conduct. (*See id.* at PageID # 14, ¶ 40). Ms. Goldblum, however, asserts that the decision was motivated in response to protected activity that she allegedly engaged in under Title IX and Title VII.

For the reasons that follow, the University requests an order, pursuant to Civil Rule 12(b)(6), dismissing the claims against it with prejudice because Ms. Goldblum's Complaint fails to set forth allegations making it plausible that the University retaliated against her in violation of Title IX or Title VII.

**II.    Plaintiff's factual allegations.**

Ms. Goldblum was hired as the University's Title IX Coordinator in June 2018.[1] (Compl., Doc. 1 at PageID # 5, ¶ 14). Her official title was Executive Director, Gender Equity & Inclusion, and her initial term of employment was to be through the 2018-2019 academic year. (*Id.* at ¶¶ 14, 14a). In this role, Ms. Goldblum was responsible for day-to-day application and review of the University's policies and practices related to Title IX, Title VII, and other equal opportunity laws. (*Id.* at ¶ 15). She was also responsible for investigating complaints regarding

---

[1] For purposes of this motion only, the University acknowledges that the Court treats the allegations in the Complaint as true. *See Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).

alleged instances of sexual harassment and/or sexual assault, coordinating responses to Title IX issues, and communicating with her supervisors about Title IX issues. (*See id.*)

In January 2019, the University's College of Arts and Sciences published an online article recognizing graduating students who would wear a "triumph cord" at graduation. (*Id.* at PageID # 7, ¶ 18). Among the students recognized in the article was a student who had previously been suspended from Bowling Green State University ("BGSU"). (*Id.* at PageID # 6-7, ¶¶ 17-18). BGSU had found the student responsible for "sexual contact without permission" after an investigation and hearing under BGSU's student code of conduct. (*Id.* at PageID # 7, ¶ 17c) After the University's College of Arts and Sciences published the article regarding the "triumph cord" recipients, some students responded negatively to the article and to the College of Arts and Sciences' recognition of this particular student. (*Id.* at ¶ 19).

In February 2019, Ms. Goldblum became aware of complaints and comments about the "triumph cord" article. (*Id.* at PageID # 10, ¶ 22). Goldblum believed that she was obligated to respond by posting a letter in the student newspaper. (*Id.* at PageID # 11, ¶ 22a). She spoke to her immediate supervisor, Dr. Bleuzette Marshall, as well as the University's Director of Communications about the issue. (*Id.* at ¶ 23). Dr. Marshall advised Ms. Goldblum that the matter was being considered and that a response would be forthcoming. (*Id.* at PageID # 12, ¶ 24). Nonetheless, Ms. Goldblum drafted a letter in response to the students who had complained about the "triumph cord" article. (*Id.* at ¶ 27). Ms. Goldblum presented a draft of this letter to Dr. Marshall. (*Id.* at ¶ 28). After reviewing the letter, Dr. Marshall informed Ms. Goldblum that the letter was not satisfactory and directed her not to send the letter. (*Id.*) Despite this direction, on February 12, 2019, Ms. Goldblum advised Dr. Marshall that she was going to send the letter to the student newspaper. (*Id.* at PageID # 13, ¶ 31). When she did not hear from Dr. Marshall

by 5:00 p.m. that day, Ms. Goldblum proceeded to send the letter to the student newspaper. (*Id.* at ¶ 32). Upon learning that the letter had been sent, Dr. Marshall contacted Ms. Goldblum and expressed her displeasure with Ms. Goldblum's actions. (*Id.* at ¶ 34). Dr. Marshall directed Ms. Goldblum never to do anything like that again. (*Id.* at ¶ 35). Thereafter, Ms. Goldblum began an informal investigation into the admission of the former BGSU student who had been highlighted in the "triumph cord" article. (*Id.* at ¶ 38).

On or about March 15, 2019, Ms. Goldblum met with Dr. Marshall and a representative from Human Resources. (*Id.* at PageID # 14, ¶ 39). She was informed that because she had sent the letter despite her supervisor's direct order not to do so, she was insubordinate and would be terminated. (*Id.* at ¶ 40). Ms. Goldblum chose to resign in lieu of termination. (*Id.* at PageID # 15, ¶ 44).

As detailed below, Ms. Goldblum's Complaint fails to allege any viable claim of retaliation under Title IX or Title VII. Her Complaint fails to state a claim upon which relief can be granted and should be dismissed.

**III.    Standard of review.**

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept factual allegations as true, and give the plaintiff the benefit of reasonable

inferences. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must also satisfy the pleading requirements in Civil Rule 8(a). This pleading standard "does not require detailed factual allegations … [but a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Also insufficient is a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 562).

**IV. Law and Argument.**

In her two-count Complaint, Ms. Goldblum alleges that the University forced her resignation in violation of the anti-retaliation provisions of Title IX and Title VII. As explained below, dismissal is appropriate because the Complaint, even when viewed in a light most favorable to Ms. Goldblum, fails to allege a plausible violation of Title IX or Title VII.

**A. The Complaint Fails to Allege a Plausible Claim of Retaliation under Title IX.**

To prevail on the merits of her Title IX retaliation claim, Ms. Goldblum must prove that the University retaliated against her *because* she complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 184 (2005).

Claims for retaliation under Title IX are analyzed under the same standards used for Title VII cases. *Nelson v. Christian Bros. University,* 226 Fed. Appx. 448, 454 (6th Cir. 2007);

*Gordon v. Traverse City Area Pub. Sch.,* 686 Fed. Appx. 315, 320 (6th Cir. 2017) (internal citation omitted).  Therefore, similar to Title VII, to establish a *prima facie* case of Title IX retaliation, Ms. Goldblum must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to the University; (3) the University thereafter took adverse action against Ms. Goldblum; and (4) there was a causal connection between the protected activity and the adverse action.  *See Gordon,* 686 Fed. Appx. at 320; *see also Varlesi v. Wayne State Univ.,* 643 Fed. Appx. 507 (6th Cir. 2016); *Elmore v. Bellarmine Univ.,* No. 3:18CV-00053, 2018 U.S. Dist. LEXIS 52564, *11-12 (W.D. Ky. March 29, 2018).

Ms. Goldblum's Title IX retaliation claim fails because her Complaint does not contain any factual allegations suggesting that she engaged in a Title IX-protected activity prior to her resignation in lieu of termination or, even if she did, any causal connection between the two.

### 1. Protected Activity

Turning first to the protected activity element, in the case of an employee (Ms. Goldblum) who is also a manager (Title IX Coordinator), federal courts have applied a "manager rule."  The "manager rule" holds, "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct."  *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 596 (E.D. Pa. 2009) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421-424 (2006)) (finding athletic director did not engage in protected activity because his job duties required reviewing Title IX violations).  Title IX retaliation cases discussing the manager rule are particularly instructive.

In *Atkinson*, the college hired plaintiff as its director of athletics.  As the director of athletics, plaintiff was responsible for ensuring compliance with Title IX.  *Id.* at 584.  The college terminated plaintiff's employment and plaintiff alleged her termination was retaliatory

under Title IX. *Id.* at 590. The court granted the college's motion for summary judgment on the Title IX retaliation claim, holding "[p]laintiff never stepped outside of her role as Athletic Director to put the College on reasonable notice of potential legal action relating to any Title IX issues." *Id*. at 599.

In *Kelley v. Iowa State Univ. of Sci. & Tech.*, plaintiff was hired by a university as its equal opportunity director and Title IX Coordinator. 311 F. Supp. 3d 1051, 1055 (S.D. Iowa 2018). The university terminated plaintiff's employment, prompting her to file a Title IX retaliation claim. *Id*. at 1057. The university moved to dismiss the claim, citing the manager rule. *Id*. at 1069. Plaintiff countered that her actions were done outside the scope of her Title IX role and, thus, the manager rule did not apply. *Id*. at 1070. The court held that, "a requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a discriminatory policy." *Id*. at 1069.

As an example, the *Kelley* court cited to an Eighth Circuit case where the court held "that a human resources manager stepped outside his role when he refused to obey what he believed to be a racially discriminatory directive to terminate an employee." *Id*., citing *EEOC v. HBE Corp.*, 135 F.3d 543 (8th Cir. 1998). The court also provided an example of when the manager rule did apply. In another Eighth Circuit case, the court applied the manager rule, "holding that a nursing home director did not engage in protected conduct under a state whistleblower statute, as 'the nature of [plaintiff's] internal complaints was to carry out her regular job duties as opposed to exposing wrongdoing.' … [plaintiff's] job duties required her 'to expose unlawful behavior internally … [and] to report compliance problems at her facilities.'" *Id*., citing *Skare v. Extended Health Servs., Inc.*, 515 F.3d 836 (8th Cir. 2008).

Using these examples, the court in *Kelley* found the university had directed plaintiff to implement policies that were contrary to Title IX and to stay silent during an OCR investigation. Therefore, the manager rule did not apply because plaintiff had stepped outside of her role when she allegedly refused to follow the university's orders. *Id*. at 1071.

### 2. Protected Activity – Ms. Goldblum investigating and communicating with her supervisors about Title IX issues.

Unlike the plaintiff in *Kelley*, the manager rule applies to Ms. Goldblum's circumstances. When Ms. Goldblum shared with her supervisor concerns that the University might be violating Title IX and began informally investigating what she believed was a Title IX violation, she merely carried out her job duties. (Compl., Doc. 1 at PageID # 11-12, 14, 17, 19, ¶¶ 23, 38, 53, 63). Ms. Goldblum's job duties included "oversight of compliance with Title IX by [the University] and for providing support and resources to students who are affected by potential violations of Title IX." (*Id*. at PageID # 6-7, ¶ 15). In addition, she was "charged with coordinating responses to Title IX issues," "investigat[ing] complaints regarding Title IX incidents," and communicating with her supervisors about Title IX issues. (*Id*.)

In other words, Ms. Goldblum's job duties required her to investigate Title IX issues and to report Title IX compliance problems to her supervisors. (*Id*. at PageID # 6-7, ¶ 15). Indeed, Ms. Goldblum admits that she took the actions she did "in her role as the Title IX Coordinator." (*Id*. at PageID # 11, ¶ 22). Thus, the manager rule applies.

Since the manager rule applies here, Ms. Goldblum did not engage in any protected activity when she investigated and communicated with her supervisors about Title IX issues.

9

### 3. Protected Activity – Ms. Goldblum's letter to the University's student newspaper.

Ms. Goldblum also alleges that her February 12, 2019 letter to the University's student newspaper constitutes protected activity. (Compl., Doc. 1 at PageID # 17, 19, ¶¶ 53, 63). This allegation requires taking a closer look at Ms. Goldblum's letter. (*See* Exhibit 1, Doc. 7-1.)[2] Her letter sought to inform the University community that the University was "looking into various processes at work so that [the University] can improve them," and to provide contact information for additional University resources. (*Id*.) Her letter does not oppose or complain about the University engaging in an unlawful discriminatory act.

"[A] vague complaint that does not reference conduct made unlawful under [Title IX] is not protected activity." *Soehner v. Time Warner Cable, Inc*., No. 1:08-cv-166, 2009 U.S. Dist. LEXIS 106619, at *9 (S.D. Ohio Nov. 16, 2009). By comparison, protected activity includes "[c]omplaining to anyone (management, unions, other employees, newspapers) about allegedly unlawful practices." *Niswander v. Cincinnati Ins. Co*., 529 F.3d 714, 719-720 (6th Cir. 2008). Even if her letter can be considered a complaint, which the University contends it clearly is not, at best, the letter fits within the former "vague complaint" category which is not protected activity.

---

[2] Although Ms. Goldblum does not attach the letter to her Complaint, the Court can consider it. In ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).) Here, Ms. Goldblum's letter to the University's student newspaper is a public record and "central to the claims" in her complaint. (Doc. 1 at PageID # 12 – 14, 17, 19, ¶¶ 27 – 36, 40, 53, 63.)

    **4. Causation**

Even if Ms. Goldblum engaged in protected activity, she still fails to allege a plausible Title IX retaliation claim.

With respect to Ms. Goldblum's "informal investigation," there is no allegation that anyone at the University, let alone any decision-maker, knew about it. (*See* Compl., Doc. 1 at PageID # 14, ¶¶ 38-40). "[D]ecisionmakers cannot 'retaliate' when unaware of the supposed triggering act." *Hopkins v. Canton City Bd. of Educ.*, 477 Fed. Appx. 349, 361-362 (6th Cir. 2012).

As for the other purported protected activity—communicating with her supervisor about Title IX issues and sending a letter to the University's student newspaper—even though Ms. Goldblum alleges her supervisor, Dr. Bleuzette Marshall, knew about that activity, she does not believe that was the cause of any retaliation.[3] Instead, Ms. Goldblum alleges that the University retaliated against her because of her informal investigation and what it threatened to expose. (*Id*. at PageID # 14-15, ¶ 42). But, again, Dr. Marshall could not have retaliated for an activity (Ms. Goldblum's informal investigation) about which she was allegedly unaware. *See Hopkins,* 477 Fed. Appx. at 361-362. For that reason, Ms. Goldblum's informal investigation could not be the cause of her resignation in lieu of termination. Accordingly, Ms. Goldblum fails to state a Title IX retaliation claim as a matter of law and it should be dismissed.

    **B. The Complaint Fails to Allege a Plausible Claim of Retaliation under Title VII.**

Ms. Goldblum's Title VII retaliation claim fails because her Complaint does not contain any factual allegations suggesting that she engaged in a Title VII-protected activity prior to her

---

[3]     Indeed it wasn't. "Goldblum was told that since she had sent the letter to the student newspaper, she was insubordinate and would be terminated." (Doc. 1 at PageID # 14, ¶ 40).

resignation in lieu of termination. She, therefore, cannot establish a *prima face* case of Title VII retaliation, and her claim should be dismissed.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known by the defendant; (3) the defendant subsequently took an adverse, retaliatory action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Lyons v. Metro. Gov't of Nashville & Davidson Cnty.*, 416 Fed. Appx. 483, 489 (6th Cir. 2011). The Supreme Court has held that the fourth prong of the test "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Here, Ms. Goldblum is unable to establish a *prima facie* case of Title VII retaliation because she did not engage in any Title VII-protected activity. Under Title VII, "[a]n employee has engaged in protected activity when 'he has opposed any practice made an unlawful employment practice by this title' (the opposition clause) or when 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title' (the participation clause)." *El-Zabet v. Nissan N. Am., Inc.*, 211 Fed. Appx. 460, 466, n.1 (6th Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)); *see also Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (discussing the "opposition" and "participation" clauses of Title VII). Ms. Goldblum has not alleged that she opposed any employment practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e-2 (listing unlawful employment practices for purposes of Title VII as including discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin"). Nor has she alleged that she in any way participated in an investigation, proceeding, or hearing under Title VII. While she did file a charge with the EEOC following her resignation in lieu of termination, that EEOC charge cannot form the basis of her Title VII retaliation claim because it was not filed until *after* the alleged retaliatory conduct.

In short, Ms. Goldblum's Complaint is devoid of factual allegations suggesting that she engaged in Title VII-protected activity. While she does allege that she investigated and reported "possible violations of Title IX by UC[,]" *see* Compl., Doc. 1 at PageID # 18, ¶ 56, that activity cannot form the basis of her Title VII retaliation claim. As explained by the Fifth Circuit Court of Appeals, "[T]itle VII provides no remedy for retaliation against individuals who raise charges of noncompliance with the substantive provisions of [T]itle IX." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997). Rather, Title VII "prohibits retaliation only against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by [T]itle VII." *Id.*; *see also Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) ("Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII"). "[O]pposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII." *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1183 (8th Cir. 1998); *see also Batuyong v. Gates*, 337 Fed. Appx. 451, 456 (6th Cir. 2009) (citing *Kodl v. Bd. of Educ. Sch. Dist. 45*, 490 F.3d 558 (7th Cir. 2007) for the proposition that "work grievances [are] not protected activity unless related to discrimination").

Because Ms. Goldblum fails to allege that she engaged in conduct protected by Title VII, her Title VII retaliation claim fails as a matter of law.[4]

**V.     Conclusion.**

For the foregoing reasons, Defendant University of Cincinnati respectfully requests that the Court dismiss this case in its entirety.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Reid T. Caryer*

REID T. CARYER (0079825)
*Trial Counsel*
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250 - Telephone
(614) 644-7634 - Facsimile
reid.caryer@ohioattorneygeneral.gov

ERIN E. BUTCHER (0087278)
MARISSA J. PALUMBO (0089283)
Senior Assistant Attorneys General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendant*

---

[4]     Even if Ms. Goldblum engaged in protected activity, she still has not alleged a plausible Title VII retaliation claim for the same reasons she has not alleged a plausible Title IX retaliation claim. *See* p. 11 above.

## **CERTIFICATE OF SERVICE**

      This will certify that the foregoing *Defendant's Motion to Dismiss* was filed electronically on July 25, 2019.  Parties may access this filing through the Court's system.

                                        */s/ Reid T. Caryer*
                                    _____
                                    REID T. CARYER (0079825)
                                    *Trial Counsel*