IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ANDREA GOLDBLUM | Case No. 1:19-CV-00398 |
| Plaintiff, | Judge: DLOTT |
| v. | |
| THE UNIVERSITY OF CINCINNATI, | OPPOSITION TO MOTION TO DISMISS |
| Defendant | |

Plaintiff Andrea Goldblum ("Goldblum") respectfully submits this Opposition to the Motion to Dismiss by the University of Cincinnati ("UC"). As set forth below, Defendant's Motion relies primarily on a doctrine – the "manager rule"— that has been not been extended to anti-discrimination claims in the Sixth Circuit.

## FACTS

Goldblum was the former Title IX Coordinator at the University of Cincinnati. (Her official title was Executive Director, Gender Equity & Inclusion. (Complaint ¶¶3, 14.) As the Title IX Coordinator at UC, Goldblum was responsible for overseeing an office that fields and investigates complaints and provides interim measures for those impacted by sexual violence and sexual harassment. (Complaint ¶ 3(b).) In her role as Title IX Coordinator, Goldblum was an advocate to compel UC to confront widespread sexual harassment and assault. In light of the #MeToo Movement, UC has acknowledged it obligation to have a safer and more inclusive campus. (Complaint ¶¶7-9.) The Complaint observes:

> In August 2108, an opinion piece in the school newspaper lauded the hiring of
> Goldblum because of her experience in supporting victims of sexual harassment and

sexual assault.  The article noted the importance of this experience in the #MeToo era:  "Considering recent events surrounding the #MeToo movement, I think now is a good time to evaluate UC's track record of handling Title IX situations."

(Complaint ¶9(b).)

She was hired by UC as the UC Title IX Coordinator in June 2018.[1]  Goldblum had over 30 years of experience in higher education, including previous service as the Title IX coordinator at Kenyon College, University of the Pacific and The Ohio State University. Goldblum was responsible for day to day applications and review of UC's policies and practices related to Title IX, Title VII, and other equal opportunity initiatives related to sex and gender.  She was also responsible for oversight of compliance with Title IX by UC and for providing support and resources to students who were affected by potential violations of Title IX.  Her job duties included:  (i) coordinating responses to Title IX issues and laws including response to reported incidents and to investigate complaints regarding Title IX incidents; (ii) providing recommendations to ensure the safety of those reporting violations as well as the school community; (iii) providing consultation strategy, and communications to senior management, including her direct supervisor, Dr. Bleuzette Marshall, ("Marshall"); and (iv) collaborating with university divisions to develop and facilitate safety and advocacy programs for the students at the university related to her position.  (Complaint ¶15.)

---

[1] The position of UC Title IX Coordinator has a checkered past and UC had difficulty filling the position. Previous UC Title IX Coordinators have been named in Federal Civil Rights lawsuits in this Court and in other federal courts.  For example, in *Doe v. University of Cincinnati*, 223 F. Supp. 3d 704 (S.D. Ohio 2016), *aff'd* 873 F.3d 393 (6th Cir. 2017), this Court granted a preliminary injunction prohibiting the UC Title IX coordinator and other administrators from suspending a student who had alleged that the school had acted in violation of his constitutional due process right to confront adverse witnesses.  Another former Title IX Director was named as a defendant in a federal lawsuit in the District of Montana, *Powell v. Montana State Univ., et al.*, D. Montana No. CV17-15. (*See e.g.* Complaint ¶14(b).)

Goldblum was fired because of her complaints about the "William Houston Matter." (Complaint ¶¶55, 65.)  William Houston was a student at UC who had previously been a Bowling Green State University football player.  Houston left Bowling Green after he was convicted of gross sexual imposition in court and was suspended by Bowling Green State University after the school determined he violated school policies prohibiting "sexual contact without permission."  In January 2019, the UC College of Arts and Sciences published on online article highlighting UC "students who show the passion and drive to complete their degree despite facing … roller-coaster challenges." (Complaint ¶19.)  Houston was profiled in the article as one of the students honored with a "triumph cord" at graduation.[2]  The article, along with a picture of Houston, were promoted by UC on its Facebook at Twitter pages.  Complaint ¶¶21-22.)

Many students at UC, including survivors of sexual assault, responded negatively to the article. These students indicated that they did not feel safe on campus and were traumatized to learn that a sex offender had been living and studying amongst them.  (Complaint ¶¶19-21.)  Goldblum became aware of the complaints and comments and believed that her job required her to respond by offering resources to those who were traumatized by the Houston article and awards and letting them know they  had been heard by the UC Administration.  In particular, the Complaint alleges:

> Goldblum, in her role as Title IX coordinator, was concerned that the promotion of Houston was a practice that fostered the creation of a sexually hostile environment and made female UC students vulnerable to sexual assault.

(Complaint ¶22(b).)  On or about February 5, 2019, Goldblum spoke with Dr. Marshall and the UC Director of Communications.  Goldblum told Dr. Marshall and the Director of Communications that

---

[2] The article is currently available at https://www.uc.edu/news/articles/2019/01/n2060727.html, but the references to Houston have been deleted.

UC could be in violation of Title IX if resources were not specifically offered to students who may have negative responses to UC giving an award to a convicted sex offender.[3]  (Complaint ¶23.) Goldblum was advised by Dr. Marshall, that the matter "was being considered" and that "a response would be forthcoming."

No response was provided. (Complaint ¶¶25-26.) Goldblum started an informal investigation into the admission of Houston.  Goldblum was particularly interested in determining whether any UC personnel had knowledge that Houston was a convicted sex offender either prior to his admission or prior to his receipt of an award.  (Complaint ¶38.)

Goldblum proceeded to draft a letter addressing the students who had complained and listing possible resources.  A draft of this letter was provided to Dr. Marshall.  Dr. Marshall advised that the letter was deemed to be unsatisfactory and not to send the letter. Despite repeated requests, Dr. Marshall provided no further response on the Houston matter.  On February 12, 2019, Goldblum advised Dr. Marshall that she was going to send the letter to the student newspaper.  Goldblum waited for a response from Dr. Marshall until after 5:00 p.m. When no objection was received, Goldblum sent the letter via email to the student newspaper. The letter was never published.  (*See generally* Complaint ¶¶27-36.)  Dr. Marshall was angry that Goldblum had sent the letter.  Goldblum was

---

[3] Goldblum shared her belief that UC may have created a hostile environment in violation of Title IX because giving an award to a convicted sex offender could deny or limit the ability of some students to participate in or benefit from UC's programs or activities.  This is a legitimate concern.  In a recent case, the Tenth Circuit held that a school could violate Title IX if the school's indifference made students "vulnerable to harassment by alleging that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities… and avoid going anywhere on campus without being accompanied by friends or sorority sisters." *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1104-1105 (10th Cir. 2019).

advised not to "ever do anything like that again."  Goldblum agreed and believed that the matter concerning the letter had been resolved.   (Complaint ¶¶34-35.)

On or about March 15, 2019, Goldblum was called into a meeting in Dr. Marshall's office.  A representative from HR and a police officer were present.  Goldblum was told that since she had sent the letter to the student newspaper, she was insubordinate and must resign immediately or she would be terminated.  Goldblum chose to resign, instead.[4] (Complaint ¶¶39-40.) This litigation followed.

## ARGUMENT

### A.    Standard

In deciding whether to grant a Rule 12(b)(6) motion, this Court is required to accept all well-pleaded factual allegations of the Amended Complaint as true and construe the complaint in the light most favorable to the plaintiffs. *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012), *quoting Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). The Amended Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.    The Title IX Retaliation Claim

#### 1.    Elements Of Title IX Retaliation Claims

Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*, and its implementing regulations, 34 C.F.R. Part 106, prohibit discrimination on the basis of sex in education

---

[4] Goldblum's resignation was the equivalent of a termination or a constructive discharge. (Complaint ¶42.)

programs or activities operated by recipients of Federal financial assistance. Title IX provides in pertinent part: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  The Supreme Court has held that "[r]etaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of [Title IX].'" *Jackson v. Birmingham Board of Education*, 544 U.S. 167, 183 (2005), *quoting Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).

A plaintiff can establish a *prima facie* case of retaliation by demonstrating: (1) she engaged in protected conduct; (2) the defendant had knowledge of the protected conduct; (3) she suffered adverse school-related action; and (4) there exists a causal connection between her protected conduct and the adverse action.  *King v. Curtis*, W.D.Mich. No. 1:14-cv-403, 2016 U.S. Dist. LEXIS 184737, at *35 (Nov. 1, 2016), *citing Gordon v. Traverse City Area Public Schools*, 182 F. Supp. 3d 715 (W.D. Mich. 2016). Courts generally look to Title VII as an analog for the legal standards to apply in Title IX discrimination and retaliation claims. *Nelson v. Christian Bros. Univ.*, 226 Fed.Appx. 448, 454 (6th Cir. 2007); *Arceneaux v. Vanderbilt Univ.*, 25 Fed. Appx. 345, 347 (6th Cir. 2001).

### 2.    The Manager Rule

Defendant alleges that Goldblum could not have engaged in protected activity because of the "manager rule."  Def. Memo at 7, *citing inter alia Kelley v. Iowa State Univ. of Science & Technology*, 311 F. Supp. 3d 1051 (S.D.Iowa 2018).  Under the "manager rule," "complaints made within the scope of an employee's job cannot constitute protected conduct" for the purposes of a Title IX or Title VII retaliation claim.  *Kelley*, 311 F. Supp. 3d at 1069.

Defendant's argument fails because the Sixth Circuit has rejected the substance of the "manager rule" in the anti-discrimination context, limiting it to retaliation claims brought under the

Fair Labor Standards Act ("FLSA"). *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), *cert. denied*, 531 U.S. 1052 (2000); *Warren v. Ohio Dept. of Pub. Safety*, 24 F.App'x 259 (6th Cir. 2001). In *Johnson*, the UC Vice President of Human Resources and Human Relations alleged that he had been terminated "because of [his] advocacy on behalf of minorities and his filing of an EEOC claim against the University." 215 F.3d at 566. UC in that case sought to apply the "manager rule" to the retaliation claim under Title VII. The school argued, as in this case, that the plaintiff did not engage in protected activity because he was a high-level official at the school who "had a contractual duty to voice such concerns." 215 F.3d at 579. The Sixth Circuit rejected this argument, explaining that it "runs counter to the broad approach used when considering a claim for retaliation…, as well as the spirit and purpose behind Title VII as a broad remedial scheme." 215 F.3d at 580. The court emphasized that an employee's duties is "of no consequence" in a retaliation claim. *Id.* The Johnson decision was re-affirmed by the Sixth Circuit in *Warren*. In *Warren* the Sixth Circuit explained that the *Johnson* decision broadly means, "There is no qualification on who the individual doing the complaining may be or on who the party to whom the complaint is made." 24 F.App'x at 265

The Fourth Circuit has followed the Sixth Circuit in rejecting the application of the "manager rule" to retaliation claims brought under anti-discrimination statutes. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 423-424 (4th Cir. 2015). In *DeMasters* the Fourth Circuit observed that *UC v. Johnson* was the "only other Court of Appeals that has addressed the issue in a precedential opinion." The *DeMasters* court, in also declining to extend the "manager rule" from the FLSA to the Title VII context, explained, "the statutory protection accorded an employee's oppositional conduct" does not turn 'on the employee's job description." 796 F.3d 409 at 422. The court stated unequivocally: "the 'manager rule' has no place in Title VII enforcement." 796 F.3d at 424. The Second Circuit has reached a similar conclusion. Littlejohn v. City of New York, 795 F.3d 297, 317 n. 16 (2d Cir. 2015) ("[W]e

decline to adopt the manager rule here. The manager rule's focus on an employee's job duties, rather than the oppositional nature of the employee's complaints or criticisms, is inapposite...").  *See also Armour v. Homer Tree Servs.*, N.D.Ill. No. 15 C 10305, 2017 U.S. Dist. LEXIS 175476, at *29-30 (Oct. 24, 2017) (observing that "the manager rule… would be inordinately difficult to apply in practice in cases involving claims under" anti-discrimination statutes); *Chapman v. Milwaukee Cty.*, 151 F. Supp. 3d 892, 900 (E.D.Wis.2015) (concluding that adopting the manager rule "would undermine the overall purpose of deterring and preventing discrimination").

The "manager rule" has, to the best of Plaintiff's research, never been applied in a Title IX or a Title VII case in the Sixth Circuit.[5]  Plaintiff is also not aware of any case applying the "manager rule" to preclude a claim under Title IX.  Rather, a number of courts have specifically declined to

---

[5] Defendant does not cite any Sixth Circuit cases – whether from the Court of Appeals or a District Court in this Circuit.  A Lexis search for the term "manager rule" among Sixth Circuit cases revealed only three decisions:  *Brabson v. Sears, Roebuck & Co.*, E.D.Tenn. No. 3:14-cv-336, 2016 U.S. Dist. LEXIS 141715 (Oct. 13, 2016); *Rogers v. Webstaurant Store, Inc.*, W.D.Ky. No. 4:18-CV-00075-JHM, 2018 U.S. Dist. LEXIS 198321 (Nov. 20, 2018); *Ross v. Fluid Routing Solutions, Inc.*, W.D.Tenn. No. 1:12-cv-01269-JDB-egb, 2014 U.S. Dist. LEXIS 71023 (May 23, 2014).  *Brabson* and *Rogers* both involved FLSA, not Title IX or Title VII, claims.  In *Ross*, the court, relying on *Johnson*, declined to extend the "manager rule" from the FLSA context to a Title VII claim.  2014 U.S. Dist. LEXIS 71023 at *42-43.

Defendant's reliance on *Atkinson v. Lafayette College*, 653 F.Supp.2d 581 (E.D.Pa.2009), is misplaced both legally and factually.  Legally, the *Atkinson* decision relied primarily (and incorrectly) on *Garcetti v. Ceballos*, 547 U.S. 410, (2006), a First Amendment case, and a number of FLSA cases.  Factually, in *Atkinson* the plaintiff had done nothing more than advocate for funding for Title IX compliance. The court observed that plaintiff's "general complaints only tangentially involved Title IX." 653 F.Supp.2d at 602.  Other courts have declined to follow *Atkinson*.  *See e.g. Bolla v. Univ. of Hawaii,* D.Haw. No. 09-00165, 2010 U.S. Dist. LEXIS 134143, at *29 (Dec. 16, 2010) ("The court is not persuaded by *Atkinson*."); *Robinson v. Wichita State Univ.*, D.Kan. No. 16-2138-DDC-GLR, 2018 U.S. Dist. LEXIS 22983, at *13 (Feb. 13, 2018) ("This Complaint, unlike the summary judgment record in *Atkinson*, sufficiently alleges that plaintiff engaged in protected activity…");  *Odoms v. YWCA of Bucks Cty.*, E.D.Pa. No. 12-7146, 2013 U.S. Dist. LEXIS 89595, at *9-10 (June 25, 2013) ("Plaintiff's actions were adversely taken against her employer, which distinguishes the present matter from the *Atkinson* case.").

extend the rule to the Title IX context.  *See Kailikole v. Palomar Community College Dist.*, S.D.Cal. No. 18-CV-02877-AJB-MSB, 2019 U.S. Dist. LEXIS 71167, at *9 (Apr. 26, 2019) ("applying the 'manager rule' to… Title IX… would potentially eliminate a large category of workers from its anti-retaliation protections"); *Robinson v. Wichita State Univ.*, D.Kan. No. 16-2138-DDC-GLR, 2018 U.S. Dist. LEXIS 22983, at *14 (Feb. 13, 2018) ("manager rule" was inapplicable to Title IX retaliation claim brought by employee who "investigated alleged sexual assaults" under school's Title IX policy).

Finally, even if the "manager rule" applies, the *Kelley* case, cited by Defendant, actually suggests that dismissal is not warranted.  In *Kelley*, a university Title IX coordinator alleged that she was terminated in retaliation for her complaints she complained about the school's failure to comply with Title IX.  The court denied  a motion to dismiss based on the "manager rule."[6]  The school in *Kelley* argued, like UC in this case, that the Title IX Coordinator was simply doing her job.  The court rejected this argument, finding that school directives that she remain silent "would have stifled [the Title IX Coordinator] from complaining" about possible violations of Title IX.  This conclusion is consistent with another case cited by Defendant, *EEOC v. HBE Corp.*, 135 F.3d 543 (8th Cir. 1998).  In *HBE*, the Eighth Circuit adopted the "manager rule" without much about its applicability to the Title VII or Title IX retaliation context.  Instead the Eighth Circuit severely limited the scope of the "manager rule" in the Title VII context, holding that a requirement of "'stepping outside' a normal role is satisfied by a showing that the employee took some action against a discriminatory policy"  135 F.3d at 554, *citing McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996).

---

[6] In *Kelley* the plaintiff did not contest "that HN21 the manager rule extends to Title IX retaliation claims."  311 F. Supp. 3d at 1069.  Given the state of the law on this issue, this is a very strange position for a plaintiff to take.

### 3. The Letter and Causation

Defendant argues that the letter to the student newspaper described in ¶¶27-36 of the Complaint did not involve protected activity, but, instead, was a "vague complaint."[7]  Def. Memo. at 10, *citing Soehner v. Time Warner Cable, Inc.*, S.D.Ohio No. 1:08-cv-166, 2009 U.S. Dist. LEXIS 106619 (Nov. 16, 2009).[8]  The letter, however, was not the only activity undertaken by Goldblum in connect with the Houston matter.  Rather, the Complaint specifically alleges that Goldblum met with UC administrators and informed them in detail of her concerns that the article about Houston constituted a Title IX violation.  The Complaint states:

> On or about February 5, 2019, Goldblum met with Dr. Marshall and the UC Director of Communications.  Goldblum told Dr. Marshall and the Director of Communications that UC could be in violation of Title IX if resources were not specifically offered to students who may have negative responses to UC giving an award to a convicted sex offender.
>
> a.  Goldblum shared her belief that UC may have created a hostile environment in violation of Title IX because giving an award to a convicted sex offender could deny or limit the ability of some students to participate in or benefit from UC's programs or activities.
>
> b.  In particular, Goldblum communicated that she was concerned that UC's actions could create a hostile environment in violation of Title IX if students

---

[7] Defendant notes that Goldblum did not attach this letter to the Complaint.  In part, this was because Plaintiff did not have access to the letter.  As described in ¶41 of the Complaint, Goldblum was escorted to her vehicle "was not allowed access to the computer…"  As a result, Plaintiff cannot confirm that this is a true and accurate copy of the letter actually sent to the student newspaper.  "If there are disputed material issues of fact regarding the enforceability or validity of a document, it should not be considered when deciding a motion to dismiss." *Burns v. United States*, 542 F.App'x 461, 466 (6th Cir. 2013), *citing Ouwinga v. Benistar* 419 Plan Servs. Inc., 694 F.3d 783, 797 (6th Cir. 2012).  *Cf Stinson v. Prudential Ins. Co. of Am.,* 857 F.Supp.2d 681, 684 n. 4 (S.D.Ohio 2012) (declining to consider letter attached by Defendant to reply brief, in part, because opposing party "has not had the opportunity to voice its opinion on the accuracy… of the letter").

[8] The Sixth Circuit will not permit a retaliation claim based on a "vague charge of discrimination." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989).  However, the Sixth Circuit "does not . . . require that the plaintiff's complaint be lodged with absolute formality, clarity, or precision." *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013).

> who are survivors of sexual assault were triggered by UC giving an award to a convicted sex offender were not provided with adequate resources.

(Complaint ¶22.)  The Complaint further describes how Goldblum, in her role as the Title IX Coordinator, had started "conducting an initial inquiry into whether [Houston's] admission or presence on campus with minimal restrictions and without informing the student body violated any of the UC Title IX policies."  (Complaint ¶35.)

This communication was sufficient to adequately describe the nature of the alleged legal violation and concrete enough to alert UC about the potential Title IX issues.  *See Yazdian v. ConMed Endoscopic Technologies, Inc.,* 793 F.3d 634, 646 (6th Cir.2015) (complaints about allegedly unlawful discrimination put defendant "on notice").  If a plaintiff complains to anyone who works for her employer about allegedly unlawful practices, that constitutes protected opposition activity.  *Johnson*, 215 F.3d at 579; *Butts v. McCullough*, 237 F. App'x 1, 5 (6th Cir. 2007).  Goldblum has engaged in a legally protected activity if her opposition to a practice was reasonable and based on a good-faith belief that UC was acting in violation of Title IX.  *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009) (discussing protected activity in Title VII context).  This is an easy standard to meet; the Sixth Circuit in *Barrett,* for example, held that an "employee has engaged in opposing activity when she complains about unlawful practices to a manager, the union, or other employees." 556 F.3d at 516. *See e.g. Crawford v. E. Kentucky Univ.,* E.D.Ky. Civil Action No. 5:17-CV-309-CHB, 2019 U.S. Dist. LEXIS 26767, at *30 (Feb. 20, 2019) (informal discussion of discrimination informally with several members of the college staff, combined with an email indicating possible discriminatory environment, sufficient).  *Compare PoplinFox v. Eagle Distrib. Co.*, 510 F.3d 587, 592 (6th Cir. 2007) (record does not contain any evidence that specifically alleged discriminatory employment practices in his discussion with supervisors).

In terms of causation, a plaintiffs' *prima facie* burden to show a "causal connection" is a burden "easily met." *See McClain v. Nw. Cmty. Corrs. Ctr. Judicial Corrs. Bd.*, 440 F.3d 320, 335 (6th Cir. 2006); *Henry v. Abbott Labs.*, 6th Cir. No. 15-4165, 2016 U.S. App. LEXIS 10604, at *27-28 (June 10, 2016). Timing, alone, can provide evidence of causation under Sixth Circuit Title VII precedent. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008). In *Mickey*, for example, the Sixth Circuit held that in situations where the protected activity and adverse action occur extremely close in time, temporal proximity alone may provide a causal inference. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation." *Id.* at 525. *See also Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation."); *Amos v. McNairy Cty.*, 622 F. App'x 529, 537 (6th Cir. 2015) ("Even after [University of Texas Southwestern Medical Center v.] Nassar[, 133 S. Ct. 2517 (2013)], . . . this court has explicitly held that temporal proximity alone can establish causation.").

Defendant's primary argument is that Dr. Marshall (and UC, by extension) were unaware of Goldblum's investigation. This is contrary to the allegations of the Complaint. The Complaint alleges that Goldblum was terminated specifically "to prevent her from conducting an adequate investigation…" into the Houston matter. (Complaint ¶42.) The Complaint further alleges:

> The adverse action against Goldblum was directly related to her in investigation and reporting of possible violations of Title IX by UC and was deigned to punish and intimidate Goldblum from publicly disclosing potential misconduct by UC officials.

(Complaint ¶50.) Under relevant Sixth Circuit precedent discriminatory "Causation can be proven indirectly through circumstantial evidence such as suspicious timing." *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009), *citing Mickey.*, 516 F.3d at 525; *Fuhr v. Hazel Park School District*, 710 F.3d 668, 676 (6th Cir. 2013) ("temporal proximity always plays a role in establishing a causal connection; its significance depends on the context."). In this case, the timing of Defendant's actions easily fit the description of 'suspicious.' Defendant provides no alternative explanation for the timing of its actions beyond suggesting that Goldblum was really terminated for being insubordinate. Def. Memo. at 11 n. 3. However, the Complaint alleges that the claim of insubordination was pretextual. (Complaint ¶38.) *See Marcum v. Bd. of Edn. of Bloom-Carroll Local School Dist.*, 727 F.Supp.2d 657, 671 (S.D.Ohio 2010) ("temporal proximity… create[d] an inference that Plaintiffs' complaints motivated these disciplinary actions.").

## C.     Title VII Claim

Plaintiff brought a Title VII claim as an alternative in the event that UC argued that Plaintiff's Title IX claims are preempted by Title VII. *See Whitson v. Tennessee*, E.D.Tenn. No. 1:16-cv-9, 2017 U.S. Dist. LEXIS 119602, at *22, n. 19 (July 31, 2017), *citing Arceneaux v. Vanderbilt Univ.*, 25 Fed. App'x 345 (6th Cir. 2001); *Weaver v. Ohio St. Univ.*, 194 F.3d 1315 (table) (6th Cir. 1999). UC has not made this argument.

UC's argument that Title VII is not applicable is unavailing. When a funding recipient retaliates against a person because she complains of sex discrimination, that violates Title VII *and* Title IX. Congress has provided a "variety of remedies, at times overlapping, to eradicate" employment discrimination. *N. Haven Bd. of Edn. v. Bell,* 456 U.S. 512, 535 n. 26 (1982), *citing Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). The Sixth Circuit, in an unpublished opinion, has

13

suggested that employment discrimination claims may be pursued under both Title VII and Title IX.

*Ivan v. Kent State Univ.*, 6th Cir. No. 94-4090, 1996 U.S. App. LEXIS 22269, at *2 n.10 (July 26, 1996)

(unpublished table decision).

## CONCLUSION

The Motion should be denied.

Respectfully submitted,

_____/s/ Joshua A. Engel_____
Joshua Adam Engel (0075769)
Jim Hardin (0056247)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the ECF system this August 1, 2019 upon all counsel of record.

_____/s/ Joshua Engel_____
Joshua Adam Engel (0075769)

14