IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREA GOLDBLUM, | : | |
| Plaintiff, | : | CASE NO. 1:19-CV-00398 |
| v. | : | JUDGE DLOTT |
| UNIVERSITY OF CINCINNATI, | : | MAGISTRATE JUDGE BOWMAN |
| Defendant. | : | |

**DEFENDANT UNIVERSITY OF CINCINNATI'S
REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant University of Cincinnati (the "University") submits this reply brief in support of its Motion to Dismiss (Doc. 7) and to address Plaintiff Andrea Goldblum's response to the motion (Doc. 9). Ms. Goldblum's Title IX and Title VII retaliation claims stem from her belief that University officials gave her an opportunity to resign in lieu of termination in retaliation for duties that she performed as the University's Title IX Coordinator. Ms. Goldblum's resignation in lieu of termination was the direct result of her own insubordinate conduct (*see* Compl., Doc. 1, at PageID # 12-13, ¶¶ 27-28, 32), not any alleged retaliatory motive of University officials. Because Ms. Goldblum's Complaint fails to set forth a plausible case of retaliation under Title IX or Title VII, the University respectfully requests that the Court dismiss this case in its entirety.

**I.    Ms. Goldblum's Title IX claim must be dismissed.**

Ms. Goldblum's Complaint fails to set forth a plausible case of Title IX retaliation. In opposing the University's Motion to Dismiss, Ms. Goldblum is unable to overcome the fact that her Complaint does not contain factual allegations suggesting that she engaged in a Title IX-protected activity prior to her resignation in lieu of termination. Furthermore, even assuming

that she has sufficiently pled a Title IX-protected activity, she fails to set forth facts sufficient to suggest any casual connection between the alleged protected activity and her resignation in lieu of termination.

### A. When investigating and communicating with her supervisors about Title IX issues, Ms. Goldblum did not engage in Title IX-protected activity.

Ms. Goldblum's Complaint alleges that she was retaliated against for sharing with her supervisors concerns that the University might be violating Title IX and for informally investigating what she believed was a Title IX violation. (Compl., Doc. 1 at PageID # 11-12, 14, 17, 19, ¶¶ 23, 38, 53, 63). These actions were admittedly taken "in her role as Title IX Coordinator." (*Id.* at PageID # 11, ¶ 22; *see also id.* at PageID # 5-6, ¶ 15). Accordingly, the "manager rule" applies. The manager rule holds that "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct." *Atkinson v. Lafayette Coll.*, 653 F.Supp.2d 581, 596 (E.D. Pa. 2009).

In response to the University's Motion to Dismiss, Ms. Goldblum indicates that she is not aware of any case applying the manager rule to preclude a claim under Title IX. (Pl.'s Opp'n Mot. Dismiss, Doc. 9 at PageID # 54). The *Atkinson* case, detailed in the University's Motion to Dismiss, is such a case. In *Atkinson*, the court granted summary judgment, explaining, "Plaintiff's Title IX activities fail to fall within the realm of 'protected conduct' because she never engaged in activity that was either adverse to the College or outside the scope of her position as Athletic Director." *Atkinson,* 653 F.Supp.2d at 596. Like the plaintiff's Title IX activities in *Atkinson*, Ms. Goldblum's actions of communicating with her supervisors about possible Title IX issues and informally investigating a potential Title IX violation fall squarely within her role as the University's Title IX Coordinator. The allegations in the Complaint fail to

suggest that she ever stepped outside of that role by, for example, *actively* assisting others in asserting Title IX rights or taking an action adverse to the University. *See id.* at 599; *accord Robinson v. Wichita State Univ.*, No. 16-2138, 2018 WL 836294, at *9 (D. Kan. Feb. 13, 2018) (applying manager rule and denying motion to dismiss because plaintiff "alleged both that he actively assisted others in asserting Title IX rights and that he personally filed adverse actions against [the university].")."  Instead, Ms. Goldblum acknowledges that the University, like her, was considering how and when to respond to the situation, albeit that the University was not acting as quickly as Ms. Goldblum would have liked. (Doc. 1, PageID # 12 – 13, ¶¶ 23 – 32).

Ms. Goldblum suggests that the Court should apply *Kelly v. Iowa State Univ. of Sci. & Tech.*, another Title IX retaliation case analyzing the manager rule, in her favor. 311 F. Supp. 3d 1051 (S.D. Iowa 2018). In *Kelly*, the court explained the rationale behind the manager rule as follows:

> 'If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manager's job would potentially be protected activity…. An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees—management employees, human resources employees, and legal employees, to name a few—being difficult to discharge without fear of a lawsuit.'

*Id.* at 1070, *quoting Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008). The court in *Kelly* found that the manager rule extends to Title IX retaliation claims. *Id.* at 1069. The court ultimately concluded, however, that the plaintiff, a Title IX Coordinator, had alleged facts sufficient to overcome application of the manager rule to her particular case. *Id.* at 1070. Specifically, the plaintiff had alleged that the university directed her to implement policies that did not comply with Title IX and to remain silent during an OCR Title IX compliance review. *Id.* The court found that the plaintiff's alleged refusal to obey these directives suggested that she

3

stepped outside her employment role and engaged in Title IX-protected activity. *Id.* at 1071. Unlike the plaintiff's allegations in *Kelly*, Ms. Goldblum's allegations of communicating with her supervisors about possible Title IX issues and informally investigating a potential Title IX violation fall squarely within her role at the University and were not contrary to any University directive. (*See* Compl., Doc. 1, at PageID # 5-6, ¶ 15).

Ms. Goldblum does allege that she sent a letter to the student newspaper in spite of her supervisor's directive. (Doc. 1, PageID # 12, ¶ 28). But, unlike the plaintiff in *Kelly*, Ms. Goldblum did not step outside her role as Title IX Coordinator when she sent the letter. Instead, the content of the letter shows that Ms. Goldblum did exactly what her Title IX Coordinator duties required. She provided information about campus counseling resources and informed the community that the University was looking into "various processes at work so that [the University] can improve them." (Doc. 1, PageID # 5 – 6, ¶ 15; Doc. 7-1).

In an attempt to evade application of the manager rule, Ms. Goldblum implies that the Sixth Circuit has rejected application of the manager rule to Title IX retaliation claims. (Pl.'s Opp'n Mot. Dismiss, Doc. 9 at PageID # 52). The Sixth Circuit's decision in *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) is not dispositive of whether the manager rule applies to Title IX retaliation claims. To the best of the University's knowledge, the Sixth Circuit has not had occasion to consider applicability of the manager rule to a Title IX retaliation claim. While courts generally look to Title VII standards as an analog for the legal standards to apply to Title IX claims, the entirety of Title VII jurisprudence is not necessarily applicable.[1] *See, e.g., Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

---

[1] The vast majority of cases cited by Ms. Goldblum in opposition to application of the manager rule are Title VII, not Title IX, cases.

4

Even assuming that the *Johnson* case is applicable, the *Johnson* and *Atkinson* opinions are not in conflict.

*Johnson* recognizes that "not… every job-related action undertaken by a high-level affirmative action official should be considered protected conduct." *Johnson*, 215 F.3d at 578. *Atkinson* expands on that notion, first, holding that complaints made within the scope of an employee's job cannot constitute protected conduct, but, second, recognizing that there are times when an employee may engage in protected conduct even where the employee's job duties include investigating or reporting Title IX issues. *Atkinson*, 653 F.Supp.2d at 596, 598.

However, somehow, the employer must be able to recognize when the employee is stepping outside her job duties. *Id*. at 597 (employee must "signal to the employer that he or she is engaging in protected activity"); *see, e.g., Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 181 (2005) (the employer must receive actual notice of the discrimination). Otherwise, "nearly every activity in the normal course of a manager's job would potentially be protected activity[.]" *Atkinson* at 597, *quoting Hagan,* 529 F.3d at 628.

As *Atkinson* recognized, to signal to the employer that the employee is stepping outside her job duties, the employee would have to "file an action adverse to the employer, *actively* assist other employees in asserting … rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected…." *Id*. (emphasis added). That is exactly what the plaintiff did in *Johnson* when he filed a discrimination complaint against the university. *Johnson*, 215 F.3d at 570. The same cannot be said for Ms. Goldblum.

Ms. Goldblum's actions of communicating with her supervisors and informally investigating a potential Title IX issue did not signal to the University that she was stepping

outside her Title IX duties and engaging in protected activity. Those actions were part of her day-to-day duties and she has not alleged otherwise. (Doc. 1, PageID # 5 – 6, ¶ 15).

### B. Ms. Goldblum's letter to the University's student newspaper does not constitute Title IX-protected activity.

In addition to arguing that the duties she performed in her role as Title IX Coordinator are protected activity, Ms. Goldblum alleges that her February 12, 2019 letter to the University's student newspaper constitutes protected activity. (Compl., Doc. 1 at PageID # 17, 19, ¶¶ 53, 63). The letter, however, does not oppose or complain about the University engaging in an unlawful discriminatory act. (*See* Doc. 7-1). Rather, the letter sought to inform the University community that the University was "looking into various processes at work so that [the University] can improve them," and to provide contact information for additional University counseling resources. (*Id.*) Nothing in the content of the letter reads like a complaint, let alone a complaint about an unlawful discriminatory act. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 719-720 (6th Cir. 2008) (protected activity requires complaining about unlawful practices).

Even if her letter can be considered a complaint, which the University contends it clearly is not, at best, the letter is a "vague complaint" which is not protected activity. "[A] vague complaint that does not reference conduct made unlawful under [Title IX] is not protected activity." *Soehner v. Time Warner Cable, Inc.*, No. 1:08-cv-166, 2009 WL 3855176 (S.D. Ohio Nov. 16, 2009); *see also Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989).

In an attempt to avoid this defect, Ms. Goldblum argues that the Court cannot consider the letter in ruling on the University's Motion. (Pl.'s Opp'n Mot. Dismiss, Doc. 9 at PageID # 56 n.7). Although Ms. Goldblum was under no obligation to attach the letter to her Complaint,

the University may introduce the letter. "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [she] relied." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Indeed, [Ms. Goldblum's] type of pleading practice underscores the need for the rule that permits a defendant to attach to a Rule 12(b)(6) motion dispositive documents upon which the claims are based. Plaintiff is not entitled to rely on revisionist history to support a legally and factually deficient claim." *Carney v. Univ. of Akron*, No. 5:15cv2309, 2016 WL 4036726, fn. 8 (N.D. Ohio July 28, 2016). Consequently, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Here, Ms. Goldblum's letter to the University's student newspaper is a public record, *see* Ohio Rev. Code §§ 149.011 and 149.43, "referred to in the Complaint," and "central to the claims contained therein." *Bassett* at 430; (Doc. 1 at PageID # 12 – 14, 17, 19, ¶¶ 27 – 36, 40, 53, 63.)

In a final attempt to sidestep the fact that the letter plainly is not protected activity, Ms. Goldblum notes that the letter "was not the only activity undertaken by [her] in connect with the Houston matter." (Pl.'s Opp'n Mot. Dismiss, Doc. 9 at PageID # 56). However, as explained above and in the University's Motion to Dismiss (Doc. 7, PageID # 38), her other "activity" (i.e. communicating with her supervisors and informally investigating a potential Title IX issue) also is not protected activity.

### C. The Complaint fails to allege facts sufficient to suggest a causal connection between any purported protected activity and Ms. Goldblum's resignation in lieu of termination.

Even assuming that Ms. Goldblum engaged in Title IX-protected activity, she stills fails to allege a cognizable Title IX retaliation claim. To prevail on the merits of her Title IX retaliation claim, Ms. Goldblum must prove that the University retaliated against her *because* she complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005). In opposing the University's Motion to Dismiss, Ms. Goldblum argues that a plaintiff's *prima facie* burden to show causation is "easily met." (Pl.'s Opp'n Mot. Dismiss, Doc. 9 at PageID # 58 (citations omitted)).[2] However, to survive a motion to dismiss, Ms. Goldblum must allege *facts* sufficient to produce an inference strong enough to "nudge [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "'need not accept as true legal conclusions or unwarranted factual inferences,' and '[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (citations omitted).

As to the issue of causation, Ms. Goldblum's Complaint offers only conclusory statements, devoid of any factual support. (*See, e.g.*, Compl., Doc. 1 at PageID # 16, ¶ 48 (alleging that Ms. Goldblum was terminated "to prevent her from conducting an adequate investigation"); *id.* at PageID # 18, ¶ 56 (concluding that her resignation in lieu of termination "was designed to punish and intimidate Goldblum from publicly disclosing potential misconduct

---

[2] The University notes that the majority of cases cited by Ms. Goldblum regarding causation pre-date the U.S. Supreme Court's decision in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013), which held that "Title VII retaliation claims must be proved according to the traditional principles of but-for causation." *See also Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 759 (M.D. Tenn. 2019) ("[a]ssuming without deciding that Nassar's but-for standard applies" to Title IX retaliation claims).

by UC officials")). Other than these conclusory statements of a retaliatory motive, Ms. Goldblum does not allege any *facts* to suggest that anyone at the University knew about her "informal investigation," which, according to Ms. Goldblum, was the cause of her resignation in lieu of termination. (*Id*.) However, there is no allegation that anyone at the University, let alone any decision-maker, knew about the investigation. (*See id.* at ¶¶ 38-40). Because "decisionmakers cannot 'retaliate' when unaware of the supposed triggering act[,]" Ms. Goldblum has failed to set forth a plausible case of Title IX retaliation. *Hopkins v. Canton City Bd. of Educ.*, 477 Fed. Appx. 349, 361-62 (6th Cir. 2012).

**II.     Ms. Goldblum fails to allege a plausible case of retaliation under Title VII.**

In response to the University's Motion to Dismiss her Title VII retaliation claim, Ms. Goldblum merely notes that this claim was brought "as an alternative in the event that UC argued that Plaintiff's Title IX claims are preempted by Title VII" and that "[t]he Sixth Circuit, in an unpublished opinion, has suggested that employment discrimination claims may be pursued under both Title VII and Title IX." (Pl.'s Opp'n Mot. Dismiss, Doc. 9 at PageID # 59-60).[3] This response misses the mark. The University is not suggesting that a plaintiff cannot pursue both a Title VII and a Title IX claim in an appropriate case. Rather, the University seeks dismissal of Ms. Goldblum's Title VII claim on the basis of the insufficiency of Ms. Goldblum's Title VII complaint.

---

[3] Ms. Goldblum's response devotes just two, perfunctory paragraphs to her Title VII retaliation claim. This cursory response should be deemed insufficient to counter the University's Motion to Dismiss her Title VII claim. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived'" (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997))).

Specifically, Ms. Goldblum's Complaint fails to allege a plausible case of Title VII retaliation. The Complaint does not set forth any facts to support an essential element of a Title VII retaliation claim—that the plaintiff engaged in activity protected by Title VII. "A fundamental requirement of [a Title VII retaliation claim] is that the employee be retaliated against for raising charges of non compliance [*sic*] with the provisions of Title VII, i.e., an employment practice." *Patterson v. W. Carolina Univ.*, No. 2:12cv3, 2012 WL 6851306, at *5 (W.D.N.C. Nov. 26, 2012). Here, Ms. Goldblum does not allege that she was retaliated against for opposing a discriminatory *employment* practice or participating in a charge or investigation of an *employment* practice prohibited by Title VII. *See generally* 42 U.S.C. § 2000e-3(a). Rather, Ms. Goldblum's Complaint focuses on her alleged activity with regard to "potential violations of Title IX[.]" (Compl., Doc. 1 at PageID # 17, ¶ 53). At its essence, Ms. Goldblum's Complaint alleges that she was retaliated against in response to actions that she purportedly took under Title IX. Simply stated, "[s]uch a claim is not cognizable under Title VII." *Patterson*, 2012 WL 6851306, at *5; *see also Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997) ("[T]itle VII provides no remedy for retaliation against individuals who raise charges of noncompliance with the substantive provisions of [T]itle IX"); *see also* Doc. 7, PageID # 42.

Assuming *arguendo* that Ms. Goldblum engaged in protected activity under Title VII, she still has not alleged a plausible Title VII retaliation claim for the same reasons she has not alleged a plausible Title IX retaliation claim. *See* Def.'s Mot. Dismiss, Doc. 7 at PageID # 40 and pp. 8-9 above.

**III.   Conclusion.**

For the foregoing reasons, and those stated in its Motion to Dismiss, the University of Cincinnati respectfully requests that the Court dismiss this case in its entirety.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Reid T. Caryer*

REID T. CARYER (0079825)
*Trial Counsel*
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250 - Telephone
(614) 644-7634 - Facsimile
reid.caryer@ohioattorneygeneral.gov

ERIN E. BUTCHER (0087278)
MARISSA J. PALUMBO (0089283)
Senior Assistant Attorneys General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This will certify that the foregoing *Defendant University of Cincinnati's Reply in Support of Motion to Dismiss Plaintiff's Complaint* was filed electronically on August 15, 2019. Parties may access this filing through the Court's system.

*/s/ Reid T. Caryer*
_____
REID T. CARYER (0079825)
*Trial Counsel*