IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Andrea Goldblum, | : | |
| Plaintiff, | : | Case No. 1:19-CV-00398 |
| v. | : | Judge Dlott |
| University of Cincinnati, | : | Magistrate Judge Bowman |
| Defendant. | : | |

**DEFENDANT UNIVERSITY OF CINCINNATI'S
OBJECTIONS TO REPORT AND RECOMMENDATION (DOC. 17)**

**I.  Introduction**

Defendant, University of Cincinnati ("UC"), pursuant to Fed.R.Civ.P. 72(b)(2), hereby files its Objections to the Report and Recommendation on Defendant's Motion to Dismiss (the "Report") (Doc. 17).

Respectfully, the Report improperly rejects application of the manager rule[1] in Title IX retaliation cases without addressing the more specific question whether the manager rule applies in Title IX retaliation cases brought by Title IX coordinators.  At the very least, the manager rule should apply in that subset of Title IX retaliation cases.

The Court should apply the manager rule to Title IX retaliation cases brought by Title IX coordinators because the rule's underpinnings apply equally to Title IX retaliation cases. Moreover, rejection of the manager rule in Title IX retaliation cases brought by Title IX coordinators risks excising the protected activity prong from the Title IX retaliation prima facie

---

[1] The manager rule holds that "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct." *Atkinson v. Lafayette Coll.*, 653 F.Supp.2d 581, 596 (E.D. Pa. 2009).

case. And, lastly, since Title IX is a Spending Clause statute, a funding recipient like UC must have notice before it can be held liable for retaliation. To the latter point, UC could only have notice that its Title IX coordinator is engaging in protected activity if the coordinator crosses the line from being an employee merely performing her job as Title IX coordinator to an employee lodging a personal complaint, *i.e.* asserting statutory rights.

## II. Standard of Review

A party may serve written objections to a report and recommendation. Fed.R.Civ.P. 72(b)(2). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (upon the filing of objections, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge").

## III. Objections

For the reasons set forth below, UC objects to the Report's findings that (1) the manager rule does not apply to Plaintiff's Title IX retaliation claim, and (2) Plaintiff engaged in protected activity. (Doc. 17, PAGEID # 114-121).

### a. The manager rule's underpinnings apply equally to Title IX retaliation claims.

Although the manager rule finds its roots in FLSA retaliation cases, its underpinnings apply equally, if not more so, in Title IX retaliation cases. The Fifth Circuit aptly described the basis for the manager rule,

2

> This rule is eminently sensible for management employees … because a part of any management position often is acting as an intermediary between the manager's subordinates and the manager's own superiors. The role necessarily involves being mindful of the needs and concerns of both sides and appropriately expressing them. Voicing each side's concerns is not only *not adverse* to the company's interests, it is exactly what the company *expects* of a manager.
>
> If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manager's job would potentially be protected activity under [the FLSA]. An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees--management employees, human resources employees, and legal employees, to name a few--being difficult to discharge without fear of a lawsuit.

*Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 628 (5th Cir. 2008).

Whereas only a fraction of the duties of a personnel director implicate the FLSA's protections, *all* of Plaintiff's duties as UC's Title IX coordinator fall within the scope of Title IX. In other words, discerning between activities within the course of the manager's job is not nearly as complicated in the FLSA context as it is in the Title IX context. This is primarily why the logic underpinning the manager rule applies equally, if not more so, in Title IX retaliation cases brought by Title IX coordinators.

      **b. Rejection of the manager rule in Title IX retaliation cases brought by Title IX coordinators risks excising the protected activity prong from the Title IX retaliation prima facie case.**

Without the manager rule, every activity involving the actions of an individual in Plaintiff's position would constitute protected activity thereby thwarting analysis of an entire prong of the Title IX retaliation prima facie case. Such a categorical rule is disfavored. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) ("not… every job-related action undertaken by a high-level affirmative action official should be considered protected conduct.").

      **c. Since Title IX is a Spending Clause statute, a funding recipient like UC must have notice before it can be held liable for retaliation.**

Title IX was enacted as an exercise of Congress' powers under the Spending Clause. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005). Thus, "private damages actions are available only where the recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Id*. Although funding recipients are on notice that Title IX prohibits "retaliation against individuals because they complain of sex discrimination," the question remains what form the complaint must take. *Id*. at 183.

It is "the assertion of statutory rights that is the triggering factor[.]" *EEOC v. Romeo Community Schs.*, 976 F.2d 985, 989 (6th Cir. 1992). In Title VII retaliation cases, what constitutes protected activity, *i.e.* the assertion of statutory rights, is specifically set forth in the statute. *Jackson*, 544 U.S. at 175; *Johnson*, 215 F.3d at 579-583. That is not the case for Title IX. Title IX prohibits retaliation against those who "advocate the rights of groups protected by the prohibition against [sex discrimination]." *Jackson* at 176-177. In *Jackson*, the girls' basketball coach "advocated" by complaining to his supervisors about the lack of funding, equipment, and facilities for the girls' basketball team. *Id*. *Jackson*, however, did not consider whether it is necessary to draw a distinction between advocacy by managers whose specific duties require advocacy, like a Title IX coordinator, and other employees, like the basketball coach in *Jackson*.

Thus, it is the assertion of statutory rights (*i.e.*, the advocacy of rights) by taking some action adverse to UC—*e.g.*, file an action adverse to UC, actively assist other employees in asserting rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected—that is the hallmark of protected activity for Plaintiff's Title IX retaliation claim. *Atkinson,* 653 F.Supp.2d at 597 (employee must "signal to the

4

employer that he or she is engaging in protected activity"); *see, e.g., Jackson*, 544 U.S. at 181 (the employer must receive actual notice of the discrimination). The manager rule provides much needed clarification for funding recipients, like UC, who must navigate between what constitutes protected versus unprotected activity.

### d. The Sixth Circuit has not addressed application of the manager rule to Title IX retaliation cases brought by Title IX coordinators.

As the Report correctly notes, courts are split on whether the manager rule applies to Title IX retaliation cases. *See, e.g., Atkinson*, 653 F. Supp. 2d at 598-599 (applying manager rule to Title IX retaliation claim); *Kelley v. Iowa State Univ. of Sci. & Tech.*, 311 F. Supp. 3d 1051 (S.D. Iowa 2018) (same); *Kailikole v. Palomar Cmty. Coll. Dist.*, 384 F. Supp. 3d 1185 (S.D. Cal. 2019) (rejecting application of manager rule to Title IX retaliation claim). Courts are also split on whether it applies in Title VII retaliation cases. *See Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp.3d 1230, 1247-1248 (D. Kan. 2016) (comparing cases). The Sixth Circuit has only considered the manager rule in the Title VII retaliation context, although it did not call it by that name. The Sixth Circuit's decision in *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) is not dispositive of whether the manager rule applies to Title IX retaliation claims.

Importantly, UC is not arguing a Title IX coordinator can never be the victim of Title IX retaliation. However, even the Sixth Circuit recognizes that "not… every job-related action undertaken by a high-level affirmative action official should be considered protected conduct." *Johnson*, 215 F.3d at 578. Again, the question is when does the assertion of rights constitute protected activity?

Whether the plaintiff in *Johnson*, a Title VII retaliation case decided by the Sixth Circuit, engaged in protected activity was a straightforward determination. Johnson filed an EEOC

complaint, which in the Title VII context is clearly protected conduct. Those are not the facts here.

### e. Plaintiff did not engage in protected activity.

Plaintiff alleges that she was retaliated against for sharing with her supervisors concerns that UC might be violating Title IX and for informally investigating what she believed was a Title IX violation. (Compl., Doc. 1 at PageID # 11-12, 14, 17, 19, ¶¶ 23, 38, 53, 63). These actions were admittedly taken "in her role as Title IX Coordinator." (*Id.* at PageID # 11, ¶ 22; *see also id.* at PageID # 5-6, ¶ 15). Accordingly, the "manager rule" applies and Plaintiff has not engaged in protected activity. *See Atkinson,* 653 F.Supp.2d at 596 (The manager rule holds that "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct.").

## IV. Conclusion.

For the foregoing reasons, and those stated in its Motion to Dismiss, the University of Cincinnati respectfully requests that the Court reject the portions of the Report denying the University's motion to dismiss Plaintiff's Title IX retaliation claim, and thereafter dismiss this case in its entirety.

    Respectfully submitted,

    **DAVE YOST (0056290)**
    **Ohio Attorney General**

    */s/ Reid T. Caryer*
    _____
    REID T. CARYER (0079825)
    *Trial Counsel*
    Ohio Attorney General's Office
    Education Section

30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250 - Telephone
(614) 644-7634 - Facsimile
reid.caryer@ohioattorneygeneral.gov

MARISSA J. PALUMBO (0089283)
Ohio Attorney General's Office
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This will certify that the foregoing *Defendant University of Cincinnati's Objections to Report and Recommendation* was filed electronically on November 4, 2019. Parties may access this filing through the Court's system.

*/s/ Reid T. Caryer*

REID T. CARYER (0079825)
*Trial Counsel*