## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **ANDREA GOLDBLUM,** | : | |
| **Plaintiff,** | : | **CASE NO. 1:19-CV-00398** |
| **v.** | : | **JUDGE MCFARLAND** |
| **UNIVERSITY OF CINCINNATI,** | : | **MAGISTRATE JUDGE BOWMAN** |
| **Defendant.** | : | |

### DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Defendant University of Cincinnati, by and through its undersigned counsel, respectfully moves this Court for a protective order preventing Plaintiff from deposing Dr. Neville Pinto, President of the University of Cincinnati.

The undersigned certifies that he has made good faith efforts to confer with opposing counsel about this matter and has attempted to resolve it without the Court's involvement. Moreover, the Court granted Defendant permission to file this motion during its January 30, 2020 discovery conference. A memorandum in support is attached.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Reid T. Caryer*

REID T. CARYER (0079825)
*Trial Counsel*
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250 - Telephone
(614) 644-7634 - Facsimile
reid.caryer@ohioattorneygeneral.gov

MARISSA J. PALUMBO (0089283)
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendant*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    INTRODUCTION**

Plaintiff Andrea Goldblum's remaining claim in this action alleges she was forced to resign from the University of Cincinnati ("University") in violation of the anti-retaliation provision of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").  (Compl., Doc. 1 at PageID # 1, and # 15, ¶¶ 44-45).  Therefore, the central issue in this case is whether Dr. Bleuzette Marshall, Plaintiff's supervisor and the sole decision-maker, retaliated against Plaintiff when she offered Plaintiff the opportunity to resign in lieu of termination for violating the University's conduct policy.

Plaintiff's claim is not complex and does not require extensive discovery.  However, Plaintiff's discovery conduct has not been proportional.  For example, Plaintiff noticed 10 depositions before ever having even taken one deposition.  Additionally, in the nine depositions she has taken so far, and in her written discovery requests, Plaintiff has explored the University's student admissions process and sought student education records.  Discovery into these topics will not lead Plaintiff to relevant evidence as to whether or not Dr. Marshall retaliated against her, and a review of the discovery compiled thus far on the topics proves their fishing expedition.  Plaintiff's discovery conduct can only be described as a post-termination investigation meant to harass and annoy the University and manufacture negative news coverage of the University.  Even more troubling is that Plaintiff has also used discovery to "punish" the University when it does not concede to her demands.

In a continuous effort to fish and harass, Plaintiff now seeks to depose the President of the University, Dr. Neville Pinto.  Dr. Pinto's deposition would exceed the number of depositions permitted under Civil Rule 30 and the parties' Joint Discovery Plan.  Dr. Pinto's involvement and

3

knowledge of the relevant issues in this case are very limited.  Plaintiff is aware that Dr. Pinto does not have relevant information beyond what has already been obtained from other witnesses.  There is simply no basis to support making Dr. Pinto, a high ranking government official, sit for a deposition regarding an issue in which he had limited involvement and was not a decision-maker. Moreover, Plaintiff's original notice to depose Dr. Pinto, served before taking any depositions, was done in retaliation because of a dispute the parties were having regarding the presence of Dr. Marshall in Plaintiff's deposition.  Plaintiff has not proceeded in good faith in seeking Dr. Pinto's deposition.

Given the history behind Plaintiff's requests to depose Dr. Pinto, partnered with the fact that Plaintiff is aware that Dr. Pinto possesses minimal information that has already been obtained through other means, Dr. Pinto's deposition would only serve to harass and annoy.  There is no basis, under any standard, for permitting Plaintiff to depose Dr. Pinto.  Accordingly, the University respectfully asks this Court to grant its motion for a protective order, precluding Plaintiff from taking Dr. Pinto's deposition in this case.

## II.     RELEVANT PROCEDURAL HISTORY

Plaintiff initially filed a notice on December 6, 2019 to take Dr. Pinto's deposition on December 27, 2019, when the University would be shut down.  This notice came on the heels of a dispute the parties were having regarding the presence of Dr. Marshall at Plaintiff's deposition and appeared to be a retaliatory measure.  At the same time of noticing Dr. Pinto's deposition, Plaintiff noticed the depositions of four additional University employees (in addition to five previously noticed depositions of University employees).  Plaintiff noticed all 10 of her allotted depositions before she ever took one deposition.

4

During a December 11, 2019 discovery conference call, the Court inquired into why it was necessary to take Dr. Pinto's deposition.  At that time, Plaintiff's only basis for taking Dr. Pinto's deposition was that Plaintiff's counsel spoke to a colleague at another university who speculated that the University of Cincinnati would not end Plaintiff's employment without involving its President.  Based on the scant explanation, the Court precluded the deposition.

Plaintiff proceeded with deposing nine University employees.  One of those depositions was the sole decision-maker in this case, Dr. Marshall.  During her deposition, Dr. Marshall testified that she spoke with Dr. Pinto about Plaintiff, but only to provide updates.  On February 12, 2019, Dr. Marshall informed Dr. Pinto that Plaintiff wanted to send a letter to the student newspaper, and Dr. Pinto informed her that the Dean of the College of Arts & Sciences was providing the University's response.  (Marshall Deposition, pp. 137-138, 147-148).[1]  Nothing else was discussed regarding the letter.  Dr. Marshall's next communication with Dr. Pinto was to let him know that she planned to end Plaintiff's employment.  (*Id*. at 189-192).  Dr. Pinto's response was that it was Dr. Marshall's decision alone.  (*Id*.)  Dr. Marshall's third communication with Dr. Pinto occurred after Plaintiff's employment had ended to alert him to a newspaper article about Plaintiff's current lawsuit.  (*Id*. at pp. 202-203).  Dr. Marshall's testimony demonstrates Dr. Pinto's limited knowledge and involvement in the matter.  Moreover, there is no indication in the record that Dr. Pinto in any way influenced Dr. Marshall's decision.

At the conclusion of all nine depositions, Plaintiff again noticed Dr. Pinto's deposition for February 4, 2020.  Plaintiff also sought the depositions of two additional University employees,

---

[1] Plaintiff's counsel provided the Court with a copy of Dr. Marshall's January 13, 2020 deposition transcript as an attachment to a January 30, 2020 e-mail.  Because the transcript has already been provided to the Court *in camera*, Defendant does not intend to file an additional copy along with this Motion.

(Morgan Shaw and Lt. David Brinker) bringing her total to 12 depositions. After receiving that notice, the University, through counsel, explained on multiple occasions that Dr. Pinto's deposition is not appropriate in this matter and is duplicative and irrelevant. Moreover, Plaintiff has not attempted to discover the information she wants through other means, such as interrogatories. Nonetheless, Plaintiff persisted in seeking Dr. Pinto's deposition, prompting the need to request a discovery conference call with the Court.

During the January 30, 2020 discovery conference call, the Court indicated that Morgan Shaw would count as Plaintiff's tenth deposition and that Plaintiff would not be permitted to take the deposition of Lt. Brinker. The Court indicated that Dr. Pinto's deposition will be considered as a request to exceed the 10 deposition limit provided for under Civil Rule 30 and permitted the University to proceed with filing the instant motion.

## III.     LAW AND ARGUMENT

### A.  Plaintiff cannot make a particularized showing to justify deposing Dr. Pinto.

A party seeking to take more than 10 depositions must obtain leave of Court and has the burden of persuading the Court that the additional depositions are necessary.[2] *See* Fed. R. Civ. P. 30(a)(2)(A)(i); *see also Moore v. Abbott Labs.,* No. 2:05- CV-1065, 2009 U.S. Dist. LEXIS 55999, 2009 WL 73876, at *1 (S.D. Ohio Jan. 8, 2009). This limit on depositions is "intended to curb abusive discovery practices" and requires counsel to be thoughtful about their discovery needs and set priorities. *Id.* To exceed the 10-deposition limit, the moving party must make a particularized showing why extra depositions are necessary. *Id.* "A district court has the discretion (and perhaps

---

[2] In the Joint Discovery Plan, both parties agreed that there was no need to increase the number of interrogatories or depositions. (Doc. 11 at PageID #76).

the obligation) to deny leave to take additional depositions when no good reason to do so has been presented." *Id.*

As this Court has noted, "the question is not whether the deposition[] would lead to the production of relevant evidence." *Id.* at *4. "[T]he question is whether [Plaintiff] has demonstrated good cause for exceeding the presumptive limit of 10 depositions…through a showing of particularized need." *Id.* "In order to satisfy that burden, [Plaintiff] cannot simply claim that [Dr. Pinto] might know something about the case." *Id.*

Plaintiff has made no particularized showing that would justify taking Dr. Pinto's deposition. Dr. Pinto's knowledge is limited to the updates provided to him by Dr. Marshall. (Marshall Depo. at pp. 137-138, 147-148, 189-192, 202-203). He was not the decision-maker and there is no evidence that he influenced Dr. Marshall's decision. (*Id.*) Dr. Pinto's testimony would be duplicative to what Dr. Marshall has already testified to.

The duplicative nature of Dr. Pinto's expected testimony also gives rise to the factors provided in Civil Rule 26(b)(2)(C)(i). Civil Rule 26(b)(2)(C)(i) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Here, Dr. Pinto's testimony would be duplicative, has already been obtained from Dr. Marshall, and could also be explored through a less burdensome process like interrogatories.

Because Plaintiff cannot make a particularized showing and because of the Civil Rule 26(b)(2)(C)(i) factors, the Court should grant the University's Motion for Protective Order.

**B.  No extraordinary circumstances exist to justify deposing Dr. Pinto in this case.**

"Many courts have found high-ranking government officials are generally not subject to deposition." *EMW Women's Surgical Center, et al. v. Glisson, et al.*, 2017 WL 3749889, at *2 (W.D. Ky. Aug. 30, 2017).  In *United States v. Morgan,* 313 U.S. 409, 422 (1941), the Supreme Court expressed concern that a high-ranking official, there the Secretary of Agriculture, had been subjected to a deposition.  This decision has led many circuit courts to adopt the extraordinary circumstances test, requiring that extraordinary circumstances be present before a high-ranking government official may be deposed.  *See Lederman v. New York City Dept. of Parks & Recreation,* 731 F.3d 199 (2d Cir. 2013); *Bogan v. City of Boston,* 489 F.3d 417, 423 (1st Cir. 2007); *In re FDIC,* 58 F.3d 1055 (5th Cir. 1995).  The extraordinary circumstances test may only be met when the official "has first-hand knowledge related to the claim being litigated … where it is shown that other persons cannot provide the necessary information."  *Glisson*, 2017 WL 3749889, *2.

It is undisputed that Dr. Pinto, the University's President, is a high-ranking government official. *See, e.g., Mansourian v. Bd. Of Regents of Univ. of Cal. at Davis*, Case No. S-03-2591, 2007 U.S. Dist. LEXIS 95428, 2007 WL 4557104 (E.D. Cal. Dec. 21, 2007); *Raml v. Creighton Univ.,* Case No. 8:08CV419, 2009 U.S. Dist. LEXIS 101199, 2009 WL 3335929 (D. Neb. Oct. 15, 2009); *Garrett v. Univ. of S. Fla. Bd. Of Trs.,* Case No. 8:17-cv-2874, 2018 U.S. Dist. LEXIS 143193, 2018 WL 4031597 (M.D. Fla. Aug. 23, 2018).  Moreover, as outlined above, Dr. Pinto's knowledge is limited in nature and does not expand into the central issue in this litigation - whether Dr. Marshall retaliated against Plaintiff.  (Marshall Depo. at pp. 137-138, 147-148, 189-192, 202-203).  Additionally, Plaintiff has already obtained information regarding Dr. Pinto's knowledge from Dr. Marshall's testimony.  (*Id*.)  Dr. Marshall testified that she was the sole decision-maker

8

and there is no evidence that Dr. Pinto influenced her decision. (*Id.*) Plaintiff cannot demonstrate extraordinary circumstances to take Dr. Pinto's deposition. Therefore, the Court should grant the University's Motion for Protective Order.

### C. Dr. Pinto is entitled to a protective order under Civil Rule 26(c).

Even if the Court does not apply the extraordinary circumstances standard, the Court should still grant the University's Motion for Protective Order under Civil Rule 26(c). Civil Rule 26(c) permits courts to issue a protective order, if justice requires and to protect individuals from "annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). Plaintiff's actions in noticing Dr. Pinto's deposition demonstrate it was done to conduct a fishing expedition meant to harass and annoy.

Plaintiff originally noticed Dr. Pinto's deposition in retaliation because of a dispute regarding the presence of Dr. Marshall at Plaintiff's deposition. The retaliation is further highlighted by the fact that it was scheduled on December 27 when the University was shut down, a fact known to Plaintiff's counsel, and without consultation with the University's counsel. And Plaintiff's counsel conceded to the Court that the only basis he had for noticing the deposition was purely speculative.

Plaintiff has conducted extensive and continuing discovery, and has no evidence that anyone other than Dr. Marshall spoke to Dr. Pinto about Plaintiff's employment. As previously stated, Dr. Marshall's conversation with Dr. Pinto demonstrates he has very little knowledge about Plaintiff's allegations and he was not a decision-maker regarding the end of her employment. Yet, Plaintiff continues to insist on taking Dr. Pinto's deposition.

Given how Dr. Pinto's deposition was originally noticed, his limited connection with this matter, and the duplicative nature of his expected testimony, it is apparent Plaintiff's push to take

Dr. Pinto's deposition is not grounded in good faith.  Plaintiff has misused discovery to explore matters of the University's student admissions process and to delve into students' education records – both having zero relevance or connection to Dr. Marshall's decision regarding Plaintiff's employment.  All these factors support the conclusion that the deposition is meant to harass and annoy.  Under Civil Rule 26(c), good cause exists to grant the University's motion for protective order.

**IV.     Conclusion.**

For the foregoing reasons, Defendant University of Cincinnati respectfully requests that the Court grant its motion for protective order precluding Plaintiff from deposing Dr. Pinto.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Reid T. Caryer*

REID T. CARYER (0079825)
*Trial Counsel*
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250 - Telephone
(614) 644-7634 - Facsimile
reid.caryer@ohioattorneygeneral.gov

MARISSA J. PALUMBO (0089283)
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7257 - Telephone
(614) 752-4677 - Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

This will certify that the foregoing *Defendant's Motion for Protective Order* was filed electronically on February 3, 2020.  Parties may access this filing through the Court's system.


*/s/ Reid T. Caryer*

_____
REID T. CARYER (0079825)