**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ANDREA GOLDBLUM<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF CINCINNATI,<br><br>Defendant | Case No. 1:19-CV-00398<br><br>Judge: MATTHEW W. MCFARLAND<br><br>OBJECTION TO ORDER OF MAGISTRATE JUDGE<br><br>ORAL ARGUMENT REQUESTED |

Pursuant to Fed. R. Civ. P. 72(a), Plaintiff Andrea Goldblum ("Goldblum") respectfully submits this objection to the February 25, 2020 Magistrate Judge's Order. (Doc#41.)

The Magistrate Judge issued an order limiting discovery into potential comparators. Order ¶1(a), The Magistrate Judge also found that additional discovery was "unduly burdensome" without requiring Defendant to submit any evidence. This Court should modify or set aside the Order because it is clearly erroneous and contrary to law.

**FACTS**

**A.    Underlying Facts**

The basic underlying facts of this case are set forth in the Court's decision denying Defendant's Motion to Dismiss. *Goldblum v. Univ. of Cincinnati*, S.D.Ohio No. 1:19-cv-398, 2019 U.S. Dist. LEXIS 181324 (Oct. 21, 2019); *Goldblum v. Univ. of Cincinnati*, S.D.Ohio No. 1:19-cv-398, 2019 U.S. Dist. LEXIS 203813 (Nov. 25, 2019). Further facts developed in discovery relevant to this Motion are found in Plaintiff's Objection to the February 12, 2020 Order of the Magistrate Judge. (Doc#39.) These facts are incorporated herein.

1

**B.     The Discovery Requests At Issue And Responses**

Defendant's Response to Discovery Requests are attached as Exhibits. This Motion concerns discovery aimed at identifying comparators.

**1.     Factual Basis Underlying the Discovery Requests**

Defendant's claim in this case is that Plaintiff was terminated[1] because she violated sections 3(c) and 3(ff) of University Policy 15.02. (A copy of Policy 15.02 is attached as an Exhibit.) Section 3(c) of the Policy prohibits "insubordination." Section 3(ff) prohibits "any other deviation from standard and acceptable behavior." This claim appears to be Defendant's articulation of a legitimate, nondiscriminatory reason for the adverse employment action under the *McDonnell Douglas* framework. *See infra.*

Defendant's Response to Plaintiff's Interrogatory No. 5 specifically states that Plaintiff was asked to resign because, among other reasons, she violated sections 3(c) and 3(ff) of the Defendant's Human Resource Conduct Policy, 15.02. (A copy of the Interrogatory Answer is attached as an Exhibit.) The alleged primary decision-maker for Defendant, Bleuzette Marshall,[2] confirmed the accuracy of this Interrogatory Answer. (Marshall Depo. at 60-61, Doc.#34-4, PageID#390-391.) Marshall also testified that all of the misconduct by Plaintiff that allegedly led to her termination were

---

[1] Defendant emphasizes, often, that Plaintiff voluntarily resigned. Plaintiff is claiming that she was forced to resign, which could constitute an adverse employment action. *See Balmer v. HCA.*, 423 F.3d 606, 615 (6th Cir. 2005) (noting that "the only legally cognizable adverse employment action identified by [Plaintiff] is her allegedly forced resignation or constructive discharge"). *See also* Marshall Depo. at 72, PageID#393 ("Q It was your intention… that if she did not resign, you were going to terminate her? A Yes.").)

[2] Plaintiff refers to Marshall as the "alleged" primary decision-maker because the record is unclear on this aspect. Marshall *claims* to be the decision-maker, but also testified that she consulted with her supervisor, the University President, about the matter. An effort to depose the President to clarify this matter is the subject of separate briefing. *See* Objections, Doc#39.

2

encompassed by sections 3(c) and 3(ff) of the Defendant's Human Resource Conduct Policy. She testified:

> Q Now the response says that she was offered the opportunity to resign for those violations [Sections 3(c) and 3(ff)], among other reasons. Are there other reasons that she was asked to resign besides what you've just discussed with me?
> A No…

(Marshall Depo. at 66, PageID#392.)

Defendant also has a separate policy, Section 15.03, that is relevant. (A copy of Policy 15.03 is attached as an Exhibit.) This Policy provides, "The University subscribes to the principle of progressive correction action…" Policy §1. A Human Resources representative, who was involved in the decision to terminate Plaintiff, testified that there may have been as many as thirty other employees at UC over the past few years who were subject to discipline for insubordination. However, the employee could not provide any more detailed information.

> Q. And are you familiar with instances at the University of Cincinnati where employees have been disciplined for insubordination?
> A. Yes.
> Q. And are you familiar with situations where the employee has been terminated for insubordination?
> A. I am.
> …
> Q. So how many situations involving employee insubordination approximately were you involved with over the past two years?...
> A. … I can't give you an exact number, but around 30.
> Q. And in how many of those cases was the employee terminated?
> A. I have been involved in several cases -- termination cases which included violation of the Conduct policy, insubordination.
> Q. Okay. So how many of those approximately 30 --
> A. I don't recall --
> Q. -- resulted in termination?
> A. -- an exact number.

3

(Deposition of Hanna Awadalla at 23-24, Doc#34-3, PageID#352.) The HR employee was unable to identify, beyond board generalizations, how Defendant decides the level of discipline for insubordination. She testified:

> Q. … So how does the University of Cincinnati determine whether an employee who is insubordinate receives a reprimand versus a termination?
> A. We review the case and we investigate and we collaborate on the corrective action.
> …
> Q. … So I'm trying to figure out what you do to decide whether this particular case should
> result in a termination versus some other discipline.
> A. That's very difficult to answer, too, because each case is different…. And each scenario is different.
> Q. I understand. But you must have some considerations that you look into when you… evaluate a case?
> A. -- I just said. We're reviewing, collaborating, and investigating.

(Awadalla Depo. at 26-28, PageID#353.) Plaintiff intends to offer an expert opinion that the termination of Plaintiff was inconsistent with this Policy and best practices at institutions of higher education.

> I am not aware of any institution of higher learning that applies principles of progressive discipline that would terminate Ms. Goldblum under those circumstances. Instead, institutions of higher learning would impose a reprimand or warning, at most, in such circumstances. As part of this process, institutions of higher learning often encourage coaching of employees to improve. This highly unusual action permits an inference that Marshall was actually motivated by other reasons.

(Dougherty Report at 3 (attached as Exhibit).)

### 2. Discovery Aimed At Identifying Comparators

Plaintiff, following depositions and initial discovery, provided additional discovery requests to Defendant aimed at identifying other employees who were disciplined at UC for similar conduct. (Request for Production of Documents and Interrogatories are attached as Exhibits.)

4

Document Requests:

1. Every document concerning corrective action upon UC employees who have violated University Policy 15.02 sections 3(c) or 3(ff) from March 15, 2014 through March 15, 2019.

> RESPONSE: Objection. This request is not likely to lead to the discovery of admissible and/or relevant evidence, is overly broad and unduly burdensome in that it seeks five years of records unrelated to this lawsuit and different categories of employees are subject to different policies and contracts (i.e. collective bargaining agreements, employments contracts), and is not proportional to the needs of this case pursuant to Fed.R.Civ.P. 26. Defendant further objects that this request is unduly burdensome in that the University does not organize and/or maintain employee records in the manner sought by this request, and cannot readily identify the records requested.

2. The personnel file for every UC employee who received corrective action as a result of violations of University Policy 15.02 sections 3(c) or 3(ff) from March 15, 2014 through March 15, 2019.

> RESPONSE: Objection. This request is not likely to lead to the discovery of admissible and/or relevant evidence, is overly broad and unduly burdensome in that it seeks five years of records unrelated to this lawsuit and different categories of employees are subject to different policies and contracts (i.e. collective bargaining agreements, employments contracts), and is not proportional to the needs of this case pursuant to Fed.R.Civ.P. 26. Defendant further objects that this request is unduly burdensome in that the University does not organize and/or maintain employee records in the manner sought by this request, and cannot readily identify the records requested.

Interrogatory:

1. Identify every University of Cincinnati employee who received corrective action for a violation of University Policy 15.02 sections 3(c) of 3(ff) from March 15, 2014 through March 15, 2019. For each employee identified:
   a. Describe the nature of the conduct that resulted in a conclusion that the employee violated University Policy 15.02 sections 3(c) or 3(ff).
   b. Describe how the University determined the appropriate level of corrective action in accordance with the principle of corrective action described in UC Policy 15.03.
   c. Identify the employee's supervisor and all other persons involved in the decision to impose the corrective action.
   d. Describe all communications between the supervisor and/or administrative authority and the Labor and Employees Relations division concerning the corrective action, as described in UC Policy 15.03.

>   e. State whether the supervisor and/or administrative authority met with the employee to discuss the corrective action prior and whether the employee was given twenty-four hours to respond to the stated reasons for corrective action, as described in UC Policy 15.03.
>
>   RESPONSE: Objection. Federal Rule of Civil Procedure 33(a)(1) permits no more than 25 written interrogatories, including all discrete subparts. Defendant further objects that this request is not likely to lead to the discovery of admissible and/or relevant evidence, is overly broad.

At the discovery conference, Plaintiff agreed to limit the request, consistent with the language in Policy 15.02, to UC employees who were not subject to collective bargaining agreements. The Magistrate Judge permitted only limited discovery on this issue. (Order ¶1(a); PageID#533.) The Magistrate Judge permitted discovery into only a subset of "director level employees" who were among the thirty employment actions recalled by the HR employee.

## ARGUMENT

**A.   Standard**

**1.   The Broad Discovery Permitted In Civil Rights Cases**

This Court has instructed litigants to be cognizant of the fact that the scope of permissible discovery, in general, is broad. *Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 457 (S.D.Ohio 2012) ("the Court must stress that it is important for all litigants… to understand that the Federal Rules of Civil Procedure authorize extremely broad discovery"), *citing United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976). In particular, relevance for discovery purposes is, by definition, broader than for trial purposes. *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-501 (6th Cir. 1970).

This Court has long recognized that the scope of permissible discovery in discrimination cases is particularly broad. *Stevenson v. Gen. Elec. Co.*, S.D.Ohio No. C-1-77-122, 1978 U.S. Dist. LEXIS 15133, at *2-3 (Oct. 4, 1978). See also *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 128

(N.D.N.Y.1984) ("Federal policy favors broad discovery in civil rights actions."); *Tinal v. Norton Healthcare, Inc.*, W.D.Ky. No. 3:11-CV-596-S, 2014 U.S. Dist. LEXIS 191995, at *11-12 (July 14, 2014) ("no question exists in the Court's mind that discovery in a federal civil rights action is intended to be broad in scope"), *citing Trevino v. Celanese Corp.*, 701 F.2d 397, 405-406 (5th Cir. 1983) ("The imposition of unnecessary limitations on discovery is especially frowned upon in [employment discrimination] cases.").

      2.      **The Party Resisting Discovery Must Demonstrate Undue Burden**

This Court requires a party resisting discovery to state with specificity that a discovery request is unduly burdensome or that the discovery sought is not discoverable under the Federal Rules. *Kafele v. Javitch, Block, Eisen & Rathborne*, S.D. Ohio No. 2:03-cv-638, 2005 U.S. Dist. LEXIS 48484, at *2 (Apr. 4, 2005) (As a general rule, "[a]ll grounds for an objection . . . shall be stated with specificity. . . . The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."); *Kline v. Mortgage Elec. Sec. Sys.*, S.D. Ohio No. No. 3:08-cv-408, 2014 U.S. Dist. LEXIS 141027, at *13 (Oct. 1, 2014 ("A responding party 'must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

**B.**    **The Legal Framework for Plaintiff's Claims**

The legal framework for Plaintiff's Title IX retaliation claim is well-established. Under Sixth Circuit precedent, Title IX retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Fuller v. Mich. Dep't of Transp.*, 580 F. App'x 416, 423 (6th Cir. 2014); *Gordon v. Traverse City Area Pub. Schools*, 686 F.App'x 315, 319-320 (6th Cir. 2017). Under that framework, there is a three part analysis:

7

- First, the employee must establish a *prima facie* case of retaliation by a preponderance of the evidence;
- Second, the employer may articulate a legitimate, nondiscriminatory reason for the adverse employment action; and
- Third, the employee may then seek to show that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation.

*See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason was pretextual in three ways. A plaintiff can show that the reason articulated by the employer:

- had no basis in fact;
- did not actually motivate the defendant's challenged conduct; or
- was insufficient to warrant the challenged conduct.

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003), *citing Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

C. **The Magistrate Judge's Decision Denying Broad Discovery Into Potential Comparators Was Clearly Erroneous And Contrary To Sixth Circuit's Decision In Bobo[3]**

The discovery in question is aimed at the pretext part of the *McDonnell Douglas* framework.[4] The Sixth Circuit has observed that in evaluating retaliation claims, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-517 (6th Cir. 2009). The Sixth Circuit has also observed that evidence of an

---

[3] The Magistrate Judge correctly did not accept Defendant's Objection that Plaintiff has exceeded the 25 interrogatories permitted by Rule 33(a)(1). Plaintiff's initial set of interrogatories had 15 interrogatories. The Court has stated the following rule for counting interrogatories: "While the term 'discrete subparts' does not have a precise meaning, courts generally agree that interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *Wilkinson v. Greater Dayton Regional Transit Auth.*, S.D.Ohio No. 3:11cv00247, 2012 U.S. Dist. LEXIS 114025, at *7-8 (Aug. 14, 2012), *quoting State Farm Mut., Auto. Ins. Co. v. Pain & Injury Rehab. Clinic, Inc.*, 2008 U.S. Dist. LEXIS 50507, at *2 (E.D. Mich., June 30, 2008); *Trevino v. ABC Am.*, Inc.., 232 F.R.D. 612, 614 (N.D. Cal. 2006). Under this test, no portion of the original 15 interrogatories served by Plaintiff must be counted separately under Rule 33(a)(1).

[4] Plaintiff anticipates no difficulty in satisfying the first part of the *McDonnell Douglas* framework in this case. The causal connection element of the *prima faciae* case is satisfied "where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007). *See also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation"); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima faciae case of retaliation."); *Amos v. McNairy Cty.*, 622 F. App'x 529, 537 (6th Cir. 2015) ("this court has explicitly held that temporal proximity alone can establish causation.").

Plaintiff also does not anticipating contesting the fact that Defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action by suggesting that Plaintiff violated Sections 3(c) and 3(ff) of Policy 15.02.

Thus, Plaintiff anticipates that this case will ultimately turn on the pretext prong of the *McDonnell Douglas* framework.

employer's treatment of other employees is often relevant to an employer's motive in acting against a plaintiff. *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012).

This discovery of other employees who were disciplined for the exact same reason goes directly to the claim that the employment action was pretextual because the misconduct was insufficient to warrant termination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003), *citing Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). The Sixth Circuit has explained that evidence of discipline imposed on other employees is directly relevant to the third kind of showing:

> the third showing is also easily recognizable and, ordinarily, consists of evidence that other employees… were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff also anticipates that her expert may be able to review the records to determine if Defendant complied generally with the principals of progressive discipline described in Policy 15.03. (*See, generally,* Daugherty Report.)

The Sixth Circuit has been clear that discovery of the type sought by Plaintiff not only is permissible, but that it is reversible error to deny such discovery. *Bobo v. United Parcel Service*, Inc., 665 F.3d 741, 749 (6th Cir. 2012). In *Bobo* the Sixth Circuit reversed a decision of a district court limiting discovery aimed at identifying possible similarly situated employees. The court observed, "Discrimination cases frequently turn on whether the plaintiff can identify one or more comparators who are similarly situated in all relevant respects." 665 F.3d at 753. Other courts following the *Bobo* decision have permitted the type of discovery sought here. *See e.g. Adamov v. U.S. Bank Natl. Assn.*, W.D.Ky. No. 3:09-CV-868-CRS-CHL, 2015 U.S. Dist. LEXIS 96523, at *16-17 (July 23, 2015) ("Plaintiff has a right to use the discovery process to attempt to develop evidence of potentially similarly situated employees."). *Nathan v. Ohio State Univ.*, S.D.Ohio No. 2:10-cv-872, 2012 U.S. Dist.

LEXIS 154693, at *27-29 (Oct. 29, 2012) (permitting discovery into other employee who allegedly were treated more favorably).

The decision of the Magistrate Judge to limit discovery to "director level employees" within the matters identified by Awadalla in her deposition was contrary to this law. The decision of the Magistrate Judge was, apparently, premised on the belief that discovery of possible comparators should be limited to actions taken by the same decision-makers. But, this is directly contrary to the holding of the Sixth Circuit in *Louzon v. Ford Motor Co.*, 718 F.3d 556, 567 (6th Cir. 2013). In *Louzan*, the court explained that in discrimination cases restricting discovery to other actions taken by the same supervisor, for example, was erroneous under *Bobo*: "it is not a prerequisite in discrimination cases that a comparator have the same supervisor as the plaintiff… we held in *Bobo* that restricting discovery based on this erroneous same-supervisor requirement amounts to '[a]n improper denial of discovery.'" 718 F.3d at 567, *quoting Bobo, supra*. Another District Court in this Circuit, reviewing *Bobo* and *Louzan*, in the context of a pretext claim, concluded, "it is inappropriate to attempt to determine whether hypothetical comparators are valid during discovery." *Escalera v. Bard Med.,* W.D.Ky. No. 4:16-CV-00121, 2017 U.S. Dist. LEXIS 147327, at *12 (Sep. 12, 2017).

To the extent that the Magistrate Judge's decision rested on a finding that discovery was unduly burdensome, this is clearly erroneous because Defendant failed to meet its burden. As noted *supra,* Defendant, as the party resisting production, has the burden to establish that the burden or expense of the proposed discovery outweighs its likely benefit; Defendant did not provide any evidence in the record of this burden. *Stanczyk v. Prudential Ins. Co. of Am.*, N.D.Iowa No. 15-CV-0097, 2016 U.S. Dist. LEXIS 197491, at *8 (Aug. 11, 2016) ("a party alleging undue burden… must demonstrate that the burden of producing the requested information would outweigh its beneficial value"); *Martinez v. City of New York*, No. 16 CV 79, 2017 U.S. Dist. LEXIS 205854, at *1 (E.D.N.Y. Dec. 14, 2017) ("The

11

party resisting discovery bears the burden of demonstrating that the discovery sought is burdensome or expensive [and] must also show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery."). The objection provided by Defendant to the discovery requests is insufficient. The objection does not describe, for example, with specificity how many records of corrective actions exist, in what form they exist, how they are filed, or how they organized. The Magistrate Judge's decision, by crediting Defendant's explanations in the absence of any evidence in the record, was clearly erroneous as a result. Courts have observed that simply "intoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." *Mead Corporation v. Riverwood Natural Resources Corporation*, 145 F.R.D. 512, 515 (D. Minn. 1992). *Cf. Tello v. A.N.G. Diner Corp.*, E.D.N.Y. No. 17 CV 749, 2018 U.S. Dist. LEXIS 65722, at *6 (Apr. 18, 2018) ("Generalized objections are insufficient to defeat discovery").[5]

Finally, the objection based on the fact that UC does "not organize or maintain employee records in the manner sought by the request" is also not well taken. To the extent that the Magistrate Judge relied on this representation, the decision was clearly erroneous. As an initial matter, the Magistrate Judge failed to consider that Ohio's public record law imposes a duty on UC beyond the duty imposed by Rule 34. This law requires UC to "organize and maintain public records in a manner that they can be made available for inspection or copying." R.C. 149.43(B)(2). Moreover, the Magistrate Judge's Order to contrary to law because it also failed to consider that Rule 34 requires a party to conduct a search for responsive documents; the obligation under the Rule is not limited to

---

[5] As part of the Rule 37 process, Counsel for Plaintiff represents that they requested that UC provide a detailed explanation of the nature of the claimed burden, in part so that the Parties could consider possible ways to narrow the requests. Defendant did not provide any additional information.

12

the manner in which a party chooses to organize or maintain its records.[6] *DiLuzio v. Village of Yorkville,* S.D.Ohio No. 2:11-cv-1102, 2016 U.S. Dist. LEXIS 177376, at *113 (Dec. 22, 2016) ("counsel has an affirmative obligation to work with his clients to plan and execute a thorough search designed to produce any and all responsive documents"); *Hock Foods, Inc. v. William Blair & Co., LLC*, No. 09-2588-KHV, 2011 U.S. Dist. LEXIS 24874, 2011 WL 884446, at *8 (D. Kan. Mar. 11, 2011) ("The Federal Rules require a party to conduct a reasonable search for responsive information."); *A.R. Arena Prods. v. Grayling Industries*, N.D.Ohio No. 5:11-CV-1911, 2012 U.S. Dist. LEXIS 100157, at *30 n. 9 (Apr. 30, 2012) ([arty "had and continues to have an obligation to undertake a thorough search for and to produce all responsive documents").

Finally, Plaintiff observes that, in an effort to minimize burden, Plaintiff attempted to obtain this information form Defendant's HR employee prior to requesting documents. This effort was unsuccessful. The employee testified that she could recall cases where employees had been terminated, but could not provide details:

> Q. So can you give me some examples of the cases of insubordination that have led to termination in the past two years?
> A. I don't remember.
> Q. You don't remember if any have occurred or you don't remember the facts of those cases?
> A. I don't remember the facts of those cases.
> Q. But you know that they have occurred?
> A. That what have occurred?
> Q. Insubordination leading to termination.
> A. Yes.
> Q. Okay. But you can't as you sit here today tell me the facts of any of those cases?
> A. I cannot.

---

[6] If the rule were otherwise, a party could avoid any discovery obligations by simply not keeping its files in an organized manner.

13

(Awadalla Depo. at 35-36, PageID#355.) The representative provided similar evasive testimony about violations of Section 3(ff) of Policy 15.02. (Awadalla Depo. at 42-43, PageID#357.)

## ADDITIONAL OBJECTION

The Magistrate Judge also permitted limited discovery into how UC handled other sex offenders who applied to the school; the Magistrate Judge permitted Plaintiff to submit an interrogatory in lieu of outstanding document requests. Plaintiff is hopeful that Defendant will provide full and complete responses to the Interrogatory; this would negate the need for any further Court action on this issue. However, to preserve any appellate issues, Plaintiff notes an objection to Paragraph 1(b) of the February 25, 2020 Order.

## CONCLUSION

The February 25, 2020 Magistrate Judge's Order. (Doc#41) should be modified or set aside as clearly erroneous and contrary to law.

Respectfully submitted,

/s/ Joshua A. Engel
Joshua Adam Engel (0075769)
Jim Hardin (0056247)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's ECF System this March 3, 2020 upon all counsel of record.

/s/ Joshua Engel
Joshua Adam Engel (0075769)

14